Penny L. Koepke
pkoepke@hoalow.biz
MAXWELL & MORGAN, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Downing, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Lowe's Companies, Inc., a North Carolina corporation, and First Advantage Corporation, a Delaware corporation,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Justin Downing ("Plaintiff" or "Downing") brings this class action complaint against Defendants Lowe's Companies, Inc. ("Lowe's") and First Advantage Corporation ("First Advantage", and collectively with Lowe's, "Defendants") to obtain redress for Defendants' serial violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA" or "Act"). Specifically, Plaintiff files the instant lawsuit to address: (1) Lowe's failure to provide lawful notices and disclosures to its job applicants and employees, (2) First Advantage's practice of failing to implement reasonable policies and procedures to ensure the maximum possible accuracy of the information contained in consumer reports, and (3) First Advantage's failure to adopt strict procedures to ensure that adverse information contained in consumer reports is complete and up to date.

Plaintiff seeks redress for all individuals similarly injured by the Defendants' conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.    Enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies, the FCRA explicitly protects consumers from disclosure of their personal information contained in their consumer reports. To that end, employers who obtain and use consumer reports regarding their job applicants and employees are required to provide, prior to obtaining consumer reports in the first place, a clear and conspicuous disclosure, in a document consisting solely of the disclosure (*i.e.*, that stands alone), that a consumer report will be obtained for employment purposes. And for their part, when preparing the reports, consumer reporting agencies must implement and follow procedures designed to ensure maximum possible accuracy of the information they provide concerning the individuals about whom the reports relate and to ensure that the information is complete and up to date.

2.    Defendant Lowe's willfully violated the FCRA by: (1) failing to provide a standalone, upfront disclosure that Defendant may procure consumer reports about its applicants and employees, and (2) failing to provide a clear and conspicuous disclosure prior to obtaining consumer reports.

3.    Lowe's willfully violated the FCRA by failing to provide applicants or employees with a standalone disclosure that clearly and conspicuously indicates—in a document consisting *solely* of the disclosure—that Lowe's may obtain a consumer report about them for employment purposes. That is, Lowe's provides a single disclosure that includes extraneous information regarding Lowe's supposed ability to obtain consumer reports regarding the applicant's children/wards. The disclosure also contains additional

extraneous information regarding future disclosures and authorizations that may be sought.

4.      The inclusion of such extraneous information overshadows the consumer report disclosure and renders the disclosure confusing to Plaintiff and to any reasonable person. By including extraneous information, it is unclear as to whether Lowe's intends to procure a consumer report regarding the applicant, their children/wards, or both. This lack of clarity frustrates the purpose of the FCRA, which is to inform consumers and allow them a meaningful opportunity to authorize such disclosures. Plaintiff was confused by the disclosure, and had a lawful disclosure been provided, Plaintiff would not have signed it.

5.      For its part, Defendant First Advantage willfully violated the FCRA by furnishing consumer reports while failing to implement and follow reasonable procedures to ensure the maximum possible accuracy of the information contained in the report. That is, First Advantage compiled consumer reports regarding Plaintiff and class members that included inaccurate dispositions of past criminal histories.

6.      First Advantage also willfully violated, and continues to violate, the FCRA by failing to maintain (or follow) strict procedures designed to ensure that public record information is complete and up to date when it is included in consumer reports and is likely to have an adverse effect on a consumer's ability to obtain employment. Here, First Advantage furnished consumer reports relating to Plaintiff and class members containing outdated and incomplete dispositions of past criminal histories.

7.      By failing to adopt (or follow) reasonable or strict procedures as required, First Advantage furnished consumer reports to third parties that contained both false and misleading information, which had an adverse effect on consumers' ability to obtain employment.

8.      Additionally, First Advantage also willfully violated the FCRA by failing to provide notice to consumers that adverse public record information was being

- 3 -

conveyed to potential employers. First Advantage deprived applicants of an opportunity to correct the false and misleading information.

9.      As a result of Defendants' willful violations of the FCRA, Plaintiff Downing and the members of the Classes were deprived of their privacy rights guaranteed to them by federal law, and they are therefore entitled to statutory damages of at least $100 and not more than $1,000 for each willful violation. *See* 15 U.S.C. § 1681n(a)(1)(A).

## PARTIES

10.      Plaintiff Downing is a natural person and citizen of the State of Arizona. He resides in Show Low, Navajo County, Arizona.

11.      Defendant Lowe's is a North Carolina corporation with its principal place of business located at 1000 Lowe's Blvd, Mooresville, North Carolina 28117.

12.      Defendant First Advantage is a Delaware corporation with its principal place of business located at 1 Concourse Pkwy NE, Suite 200, Atlanta, GA 30328.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, which is a federal statute. Jurisdiction is additionally proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* ("CAFA"), because the classes each consist of over 100 people, there is minimal diversity, and the amount in controversy, when aggregated, is over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

14.      This Court has personal jurisdiction over Defendants because they conduct substantial business in this District and the unlawful conduct alleged in the Complaint occurred in this District or the unlawful decisions that lead to the violations of the FCRA set forth in this Complaint were made in this District.

15.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in or

emanated from this District, and because Plaintiff resides in this District and applied for work with Lowe's in this District.

## FACTS COMMON TO PLAINTIFF AND ALL COUNTS

16.     Lowe's is a well-known American retail company specializing in home improvement. It operates warehouse-style home improvement stores throughout the United States, including Arizona.

17.     First Advantage is a consumer reporting agency that collects and aggregates information about consumers world-wide. First Advantage generates a substantial portion of its business and income by providing background screening services to employers nationwide

18.     In or around February 2022, Plaintiff applied for a job with Lowe's at a store located in Show Low, Arizona.

19.     In or around February 2022, in connection with his employment application, Plaintiff was required to complete various acknowledgments of company disclosures, including a disclosure regarding Plaintiff's background report.

20.     Rather than provide a standalone disclosure—as the FCRA unambiguously requires—Plaintiff was presented with a document styled, "Disclosure Regarding Background Report." (*See* FCRA Disclosure, a true and accurate copy of which is attached hereto as Ex. A.) The pre-report disclosure that Lowe's provided to applicants and employees unlawfully combines disclosures to obtain consumer reports regarding applicants and their children or wards. It states:

> Lowe's Companies, Inc. and/or its affiliates, including Lowe's Home Centers, LLC, ("Lowe's") may obtain a "background report" about you or your child/ward for employment purposes from a third-party consumer reporting agency. "Background report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on your or your child's/ward's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. The reports may include information regarding your or your child's/ward's history, criminal history, social security verification, motor vehicle records, verification of your education or employment history, or other background check results.

Lowe's will not request any information related to your or your child's/ward's worthiness, credit standing, or credit capacity without providing you or your child/ward, separately, with information related to the use of that information and obtaining separate authorization from you to obtain such information, where required.

(*See* Ex. A).

21.     That is, Lowe's provides a single disclosure that seeks to satisfy the disclosure requirements for it to obtain a consumer report regarding both the applicants and their children, including their or their children's criminal history, motor vehicle records, credit standing, credit capacity, educational history, employment history and more.

22.     The disclosure also contains additional extraneous information: Despite initially explaining that a consumer report may contain information relating to the applicant's or their children's credit worthiness, credit standing, and credit capacity, in the very next paragraph Lowe's purports to explain that it will not request any information relates to applicant's or their children's "worthiness, credit standing, or credit capacity" unless it provides a separate disclosure and authorization for credit information.

23.     The disclosure does not standalone, nor is it clear and conspicuous. It is opaque and confusing.

24.     The inclusion of such extraneous information overshadows the consumer report disclosure and renders the disclosure confusing to Plaintiff and the other class members. By combining the disclosure to obtain an applicant's consumer report with a disclosure to obtain information about their child or ward in a single document, and by including a confusing and conflicting explanation regarding future disclosures, it is unclear whether Lowe's intends to procure consumer reports regarding applicants, their children/wards, or both. Nowhere does Lowe's make any attempt to explain why it would need to access the consumer report of an applicant's children, wards, or other offspring. This lack of clarity frustrates the purpose of the FCRA, which is to inform consumers and

allow them a meaningful opportunity to authorize such disclosures. Had a lawful disclosure been provided, Plaintiff and others would not have signed it.

25.     For its part, First Advantage furnished consumer reports to Lowe's and other potential employers without first implementing reasonable procedures to ensure the maximum possible accuracy of the information contained in the report, and failed to implement strict procedures designed to ensure that when public information contained in a consumer report is likely to have an adverse effect on a consumer's ability to obtain employment, that such sensitive information is complete and up to date.

26.     Lowe's contracted with First Advantage to compile and furnish a consumer report regarding Downing and other class members for employment purposes.

27.     On or about February 26, 2022, First Advantage commenced a search for Plaintiff's past criminal history to be included in his consumer report.

28.     After the search commenced, First Advantage noted that additional handling was required with respect to Plaintiff's past criminal history.

29.     On February 26, 2022, First Advantage noted that research was required with respect to Plaintiff's past criminal history.

30.     On March 2, 2022, First Advantage again noted that research was required with respect to Plaintiff's past criminal history.

31.     On March 2, 2022, First Advantage furnished a consumer report regarding Plaintiff to Lowe's for employment purposes.

32.     The report included inaccurate and materially misleading information relating to Plaintiff's prior criminal history, which had a negative impact on his employment opportunities. In preparing the report, First Advantage failed to follow reasonable procedures to ensure the maximum possible accuracy of the information contained in the report. Instead, First Advantage furnished an inaccurate report containing three past criminal convictions with the disposition stated as "guilty".

33.     While Plaintiff did plead guilty to the three criminal charges between 2006

- 7 -

and 2009, it is not accurate to state that the disposition of those cases is "guilty".

34. On November 24, 2020, the Navajo County Superior Court issued an Order setting aside Plaintiff's judgments of guilt (*see* Order Setting Aside Judgment of Guilt, a true and accurate copy of which is attached hereto as Ex. B), which restored Plaintiff's civil rights under Arizona law pursuant to A.R.S. § 13-905. The Order setting aside the judgments of guilt were made publicly available at https://apps.supremecourt.az.gov/publicaccess/minutes.aspx.

35. Judgments setting aside guilt are not some arbitrary distinction. Rather, when a court sets aside a criminal conviction pursuant to A.R.S. § 13-905 and includes a certificate of second chance, the individual's civil rights are restored, including occupational rights. The restoration of rights includes the release of the individual from all barriers and disabilities in obtaining occupational licenses issued under Arizona Title 32. *See* A.R.S. § 13-905(K). Further, Arizona law provides potential employers with protection should they choose to hire individuals that have had their convictions set aside. *Id.*; *see also* A.R.S. § 12-558.03, *et seq.*

36. By failing to inform potential employers that a prior conviction was set aside, First Advantage provides false and inaccurate information that deprives employers of critical data needed to make an informed decisions regarding potential applicants. It also strips job applicants like Plaintiff from having the ability to attain gainful employment.

37. Additionally, despite preparing the report with public record information that was likely to have an adverse effect on Plaintiff's ability to obtain employment, First Advantage also failed to provide any notice that the information was being furnished to Lowe's. This failure deprived Plaintiff of a meaningful opportunity to correct the inaccurate information.

38. Based on foregoing, Plaintiff brings this suit, on behalf of himself and those similarly situated, seeking redress for Defendants' widespread and willful violations of

the FCRA. Such violations entitle him, and other similarly situated persons, to statutory

damages of not less than $100 and not more than $1,000 per violation.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure Rule

23(b)(3) on behalf of himself and the following Classes defined as follows:

**Lowe's Class:** All persons in the United States who (1) from a date two
years prior to the filing of the initial complaint in this action to the date
notice is sent to the Class; (2) applied for employment with Lowe's; (3)
about whom Lowe's procured a consumer report; and (4) who were
provided the same form FCRA disclosure and authorization as the
disclosure and authorization form Lowe's provided to Plaintiff.

**First Advantage Procedures Class:** All persons in the United States (1)
from a date two years prior to the filing of the initial complaint in this action
to the date notice is sent to the Class; (2) about whom First Advantage
provided a consumer report; (3) to any employer or potential employer; (4)
where the consumer report contained a criminal disposition of "guilty"; and
(5) where the consumer's conviction had been set aside pursuant to A.R.S.
§ 13-905.

**First Advantage Notice Class:** All employees or job applicants in the
United States who (1) from a date two years prior to the filing of the initial
complaint in this action to the date notice is sent to the Class; (2) had a
consumer report prepared about them by First Advantage; (3) that
contained public record information regarding any criminal conviction; (4)
where First Advantage provided the consumer report to an employer or
potential employer without providing any notice of the disclosure to the
employee or applicant.

40.     Excluded from the Classes are (1) Defendants, Defendants' agents,

subsidiaries, parents, successors, predecessors, and any entity in which Defendants or

their parents have a controlling interest, and those entities' officers and directors, (2) the

Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate

Judge's immediate family, (3) persons who execute and file a timely request for

exclusion, (4) persons who have had their claims in this matter finally adjudicated and/or

otherwise released, (5) Plaintiff's and Defendants' counsel, and (6) the legal

representatives, successors, and assigns of any such excluded person. Plaintiff anticipates

the need to amend the Complaint, including the Class Definitions, following a reasonable period for class discovery.

41.    **Numerosity:** The exact number of class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable for each of the Classes. On information and belief, there are thousands of individuals that fall into the defined Classes. Further, the class members can readily be ascertained through objective criteria, including Defendants' records.

42.    **Commonality:** Common questions of law and fact exist as to all members of the Classes for which this proceeding will provide common answers in a single stroke based upon common evidence, including:

(a)    Whether First Advantage violated the FCRA;

(b)    Whether First Advantage prepared consumer reports with inaccurate criminal dispositions;

(c)    Whether First Advantage implemented policies and procedures to ensure maximum possible accuracy of the consumer reports that it prepares;

(d)    Whether First Advantage failed to follow its own policies and procedures to ensure the maximum possible accuracy of the consumer reports that it prepares;

(e)    Whether First Advantage implemented strict procedures to ensure that where adverse public record information reported on a consumer report is likely to impact an applicant's ability to obtain employment that the information is complete and up to date;

(f)    Whether First Advantage failed to follow its own procedures to ensure that adverse public record information that is reported on a consumer report is complete and up to date;

(g)    Whether First Advantage's violations of the FCRA were willful;

(h)    Whether Lowe's conduct described herein violated the FCRA;

(i)    Whether Lowe's has procured or caused to be procured consumer reports

1         about job applicants and employees;

2     (c)     Whether Lowe's disclosure violates the FCRA's requirement that the pre-

3         report disclosure be clear and conspicuous in a document consisting solely

4         of the disclosure; and

5     (j)     Whether Lowe's violations of the FCRA were willful.

6     43.    **Typicality:** As a result of Defendants' uniform and repeated pattern of

7 providing and preparing consumer reports, Plaintiff and the Class Members suffered the

8 same injury and similar damages. If Defendants' actions violated the FCRA as to

9 Plaintiff, then it violated the FCRA as to all Class Members. Thus, Plaintiff's claims are

10 typical of the claims of the other Class Members.

11     44.    **Adequate Representation:** Plaintiff is a member of the Classes and both

12 he and his counsel will fairly and adequately represent and protect the interests of the

13 Classes, as neither has interests adverse to those of the Class Members and Defendants

14 have no defenses unique to Plaintiff. In addition, Plaintiff has retained counsel competent

15 and experienced in complex litigation and class actions including class actions related to

16 the procurement of consumer reports for employment purposes under the Fair Credit

17 Reporting Act. Further, Plaintiff and his counsel are committed to vigorously prosecuting

18 this action on behalf of the members of the Classes, and they have the financial resources

19 to do so.

20     45.    **Predominance:** The common questions of law and fact set forth above go

21 to the very heart of the controversy and predominate over any supposed individualized

22 questions. Irrespective of any given Class Member's situation, the answer to whether

23 Defendants' conduct described herein repeatedly violated the FCRA is the same for

24 everyone—a resounding "yes"—and the same will be proven using common evidence.

25     46.    **Superiority and Manageability:** A class action is superior to all other

26 methods of adjudicating the controversy. Joinder of all class members is impractical, and

27 the damages suffered by/available to any individual Class Members will likely be small

28 relative to the cost associated with prosecuting a lawsuit. Thus, the expense of litigating

1  an individual action will likely prohibit the Class Members from obtaining effective relief

2  for Defendants' misconduct. In addition, there are numerous common factual and legal

3  questions that could result in inconsistent verdicts should there be several successive

4  trials. In contrast, a class action will present far fewer management difficulties, and it will

5  increase efficiency and decrease expense. Further, class-wide adjudication will also

6  ensure a uniform decision for the Class Members.

7      47.    Plaintiff reserves the right to revise the definition of the Classes as

8  necessary based upon information obtained in discovery.

9  **COUNT I**
**Violation of 15 U.S.C. § 1681b, *et seq.***

10  **(On Behalf of Plaintiff and the Lowe's Class)**

11      48.    Plaintiff incorporates by reference the foregoing allegations as if fully set

12  forth herein.

13      49.    The FCRA declares that:

14
15  Except as provided in subparagraph (B), a person may not procure a
consumer report, or cause a consumer report to be procured, for

16  employment purposes with respect to any consumer, unless—

17  (i) a clear and conspicuous disclosure has been made in writing to the
consumer at any time before the report is procured or caused to be

18  procured, in a document that consists solely of the disclosure, that a
consumer report may be obtained for employment purposes . . . .

19
20  15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

21      50.    The FCRA defines a consumer report as:

22  . . . any written, oral, or other communication of any information by a
consumer reporting agency bearing on a consumers' credit worthiness,

23  credit standing, cred-it capacity, character, general reputation, personal
characteristics, or mode of living which is used or excepted to be used or

24  collected in whole or in part for the purpose of serving as a factor

25  establishing the consumer's eligibility for . . .

26  (B) employment purposes . . .

27  15 U.S.C. § 1681a(d)(1).

28      51.    Lowe's employment background checks are consumer reports.

52.     The pre-report disclosure that Lowe's provided to applicants and employees unlawfully combines a disclosure to obtain consumer reports about them with a disclosure to obtain consumer reports about their children or wards. (Ex. A.) Lowe's provides a single disclosure that confusingly combines information about both the applicants themselves as well as regarding their children or wards, including their or their children's/ward's criminal history, motor vehicle records, credit standing, credit capacity, educational history, employment history and more. (*Id.*)

53.     The disclosure also contains additional extraneous information that appears confusing and contradictory. (*Id.*) Despite explaining that a consumer report may contain information relating to the applicant's or their children's/ward's credit worthiness, credit standing, and credit capacity, in the very next paragraph Lowe's purports to explain that it will not request any information relates to applicant's or their children's/ward's "worthiness, credit standing, or credit capacity" unless it provides a separate disclosure and authorization for such credit information. (*Id.*)

54.     By combining the applicant's and their children's/ward's disclosure into one document, and by including a confusing and conflicting explanation regarding disclosures, Lowe's disclosure cannot be said to "stand alone" in a document that consists solely of the disclosure. A reasonable person would not have understood or authorized the reports had an appropriate disclosures been provided. Plaintiff and the other class members wouldn't have authorized the reports had appropriate disclosures been provided.

55.     Defendant procured consumer reports with respect to Plaintiff and the Lowe's Class. The disclosures provided to Plaintiff were the same or substantially the same as the one provided to all Lowe's Class members. Thus, Defendant uniformly violated the FCRA rights of all Class members in the same way and, in the process, violated their right to information and their privacy rights as delineated by Congress.

56.     Defendant's violation of 15 U.S.C. § 1681b(b)(2)(A)(i) was willful for at least the following reasons:

- 13 -

(i)   The rule that FRCA disclosures consist "solely" of that disclosure has been the law established for well over a decade.

(ii)  Lowe's is a large corporation who regularly engages outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others.

(iii) Lowe's previously settled a class action lawsuit for alleged violations of the FCRA's stand alone disclosure requirements. As such, its failure to comply with the FCRA cannot be seen as anything other than a willful defiance of the Act's requirements.

(iv)  Lowe's inclusion of the disclosures relating to applicant's children or wards was intentional and serves no purpose to the vast majority of job applicants, including Plaintiff; and

(v)   Clear judicial and administrative guidance—dating back to at least the 1990s—regarding a corporation's FCRA responsibilities exists and is readily available explaining that such disclosures must stand-alone. This readily-available guidance means Lowe's either was aware of its responsibilities or plainly should have been aware of its responsibilities but ignored them and violated the FCRA anyway.

(vi)  The Ninth Circuit has clearly articulated the law in this area in a series of cases, beginning in 2017: *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017); *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019); and *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1095 (9th Cir. 2020). Thus, at this point in time there is no excuse for a company like Lowe's to be in noncompliance with the FCRA's clear and unambiguous requirements.

57.   Plaintiff and the Lowe's Class seek damages under 15 U.S.C. § 1681n, *et seq.* Indeed, Plaintiff and the Lowe's Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

58.   In the alternative, Plaintiff and the Lowe's Class seek actual damages under 15 U.S.C. § 1681o, *et seq.* Lowe's acted negligently by failing to provide a standalone disclosure. Had Lowe's provided a standalone disclosure, Plaintiff and the class members would not have authorized the procurement of their reports. As such, Lowe's breached its

1    duty of care to Plaintiff and the Lowe's Class and this breach is the direct and proximate

2    cause of Plaintiff's and the class members' damages.

3        59.    Accordingly, under the FCRA, Plaintiff and the Lowe's Class seek

4    statutory damages, reasonable cost and attorneys' fees, pre- and post-judgment interest,

5    and such other relief as the Court deems necessary, reasonable, and just.

6                                    **COUNT II**
                          **Violation of 15 U.S.C. § 1681b, *et seq*.**
7                        **(On Behalf of Plaintiff and the Lowe's Class)**

8        60.    Plaintiff incorporates by reference the foregoing allegations as if fully set

9    forth herein.

10       61.    The FCRA declares that:

11       Except as provided in subparagraph (B), a person may not procure a
12       consumer report, or cause a consumer report to be procured, for
         employment purposes with respect to any consumer, unless—
13
         (i) a <u>clear and conspicuous</u> disclosure has been made in writing to the
14       consumer at any time before the report is procured or caused to be
15       procured, in a document that consists solely of the disclosure, that a
16       consumer report may be obtained for employment purposes . . . .

17   15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

18       62.    The FCRA defines a consumer report as:

19       . . . any written, oral, or other communication of any information by a
         consumer reporting agency bearing on a consumers' credit worthiness,
20       credit standing, cred-it capacity, character, general reputation, personal
         characteristics, or mode of living which is used or excepted to be used or
21       collected in whole or in part for the purpose of serving as a factor
22       establishing the consumer's eligibility for . . .

23       (B) employment purposes . . .

24   15 U.S.C. § 1681a(d)(1).

25       63.    Lowe's background checks are consumer reports.

26       64.    In addition to failing to stand-alone, Lowe's disclosure also willfully

27   violated the FCRA by not being clear and conspicuous. The disclosure repeatedly and

28   confusingly informs Plaintiff and the Class Members that Lowe's may obtain consumer

reports regarding both them and their children or wards. The scope of the consumer reports can also include information concerning the applicant's or their children's or ward's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living, history, criminal history, social security verification, motor vehicle records, verification of your education or employment history, or other background check results. The inclusion of multiple disclosures regarding applicants and their children or wards renders the disclosure confusing and cannot be said to be "clear and conspicuous".

65.    The disclosure also confusingly includes conflicting information regarding the procurement of credit information. Again, Lowe's discloses that a consumer report may contain information relating to the applicant's or their children's credit worthiness, credit standing, and credit capacity. Then, in the very next paragraph, Lowe's purports to explain that it will not request any information related to applicant's or their children's "worthiness, credit standing, or credit capacity" unless it provides a separate disclosure and authorization for credit information. The unnecessary inclusion of this conflicting information detracts from the purpose of the disclosure and renders the disclosure confusing.

66.    In short, the pre-report disclosure that Lowe's provided to Plaintiff and the Lowe's Class members willfully violated the FCRA by not being clear and conspicuous. Indeed, a reasonable person would have been confused by the disclosure.

67.    Plaintiff and the other class members wouldn't have authorized the reports had appropriate disclosures been provided.

68.    Defendant procured consumer reports with respect to Plaintiff and the Lowe's Class. The disclosures provided to Plaintiff were the same or substantially the same as the one provided to all Lowe's Class members. Thus, Defendant uniformly violated the FCRA rights of all Class members in the same way and, in the process, violated their right to information and their privacy rights as delineated by Congress.

69. Defendant's violation of 15 U.S.C. § 1681b(b)(2)(A)(i) was willful for at least the following reasons:

(i) The rule that FRCA disclosures be "clear and conspicuous" has been the law established for well over a decade;

(ii) Lowe's is a large corporation who regularly engages outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others;

(iii) Lowe's previously settled a class action lawsuit for alleged violations of the FCRA's clear and conspicuous disclosure requirements. As such, its failure to comply with the FCRA cannot be seen as anything other than a willful defiance of the Act's requirements;

(iv) Lowe's inclusion of the disclosures relating to applicant's children or wards was intentional and serves no purpose to the vast majority of job applicants, including Plaintiff; and

(v) Clear judicial and administrative guidance—dating back to at least the 1990s—regarding a corporation's FCRA responsibilities exists and is readily available explaining that such disclosures must be clear and conspicuous. This readily-available guidance means Lowe's either was aware of its responsibilities or plainly should have been aware of its responsibilities but ignored them and violated the FCRA anyway.

(vi) The Ninth Circuit has clearly articulated the law in this area in a series of cases, beginning in 2017: *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017); *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019); and *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1095 (9th Cir. 2020). Thus, at this point in time there is no excuse for a company like Lowe's to be in noncompliance with the FCRA's clear and unambiguous requirements.

70. Plaintiff and the Lowe's Class seek damages under 15 U.S.C. § 1681n, *et seq.* Indeed, Plaintiff and the Lowe's Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

71. In the alternative, Plaintiff and the Lowe's Class seek actual damages under 15 U.S.C. § 1681o, *et seq.* Lowe's acted negligently by failing to provide a disclosure

- 17 -

that was clear and conspicuous. Had Lowe's provided a clear and conspicuous disclosure, Plaintiff and the class members would not have authorized the procurement of their reports. As such, Lowe's breached its duty of care to Plaintiff and the Lowe's Class and this breach is the direct and proximate cause of Plaintiff's and the class members' damages.

72.     Accordingly, under the FCRA, Plaintiff and the Lowe's Class seek statutory damages, reasonable cost and attorneys' fees, pre- and post-judgment interest, and such other relief as the Court deems necessary, reasonable, and just.

**COUNT III**
**Violation of 15 U.S.C. § 1681e, *et seq.***
**(On Behalf of Plaintiff and the First Advantage Procedures Class)**

73.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

74.     First Advantage is a "person" and a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b) and (f).

75.     Plaintiff and members of the First Advantage Procedures Class are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

76.     The FCRA declares that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

77.     First Advantage prepared inaccurate and materially misleading consumer reports relating to Plaintiff's prior criminal history, which had a negative impact on his employment opportunities.

78.     In preparing the report, First Advantage failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in the report. Indeed, First Advantage furnished a report containing three prior criminal convictions with the disposition stated as "guilty". This was inaccurate.

- 18 -

79.     While Plaintiff pleaded guilty to the three charges between 2006 and 2009, he has since taken steps to rehabilitate his standing in his community such that the disposition is no longer "guilty".

80.     On November 24, 2020, the Navajo County Superior Court issued an Order setting aside Plaintiff's judgments of guilt (*see* Ex. B), which restored Plaintiff's civil rights under Arizona law pursuant to A.R.S. § 13-905. The Order setting aside the judgments of guilt were made publicly available at https://apps.supremecourt.az.gov/publicaccess/minutes.aspx.

81.     The judgments setting aside guilt are not the same as a criminal conviction. Rather, when a court sets aside a criminal conviction pursuant to A.R.S. § 13-905 and includes a certificate of second chance, the individual's civil rights are restored, including occupational rights. The restoration of rights includes the release of the individual from all barriers and disabilities in obtaining occupational licenses issued under Arizona Title 32. *See* A.R.S. § 13-905(K). Further, Arizona law provides potential employers with protection should they choose to hire individuals that have had their convictions set aside. *Id.*; *see also* A.R.S. § 12-558.03, *et seq.*

82.     By failing to inform potential employers that a prior conviction was set aside, First Advantage robs employers of critical information to make an informed decision regarding potential applicants and the potential risks associated with hiring applicants.

83.     On information and belief, First Advantage has prepared more than one report regarding Plaintiff that contained the same inaccurate information.

84.     On information and belief, First Advantage's inclusion of the "guilty" disposition on Plaintiff's consumer report violated its own written policies and procedures to ensure the maximum possible accuracy of the information contained in consumer reports.

85.     Pursuant to 15 U.S.C. § 1681o, *et seq.* and 15 U.S.C. § 1681n, *et seq.*, First Advantage is liable to Plaintiff and the First Advantage Procedures Class for failing to

- 19 -

implement and follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's and the class members' consumer reports in violation of 15 U.S.C. § 1681e(b).

86.     Defendant's violation of 15 U.S.C. § 1681e(b) was willful for at least the following reasons:

(i)     The rule that consumer reporting agencies must implement and follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumer reports has been the law established for decades;

(ii)    On information and belief, First Advantage adopted and then failed to follow its own written policies and procedures to ensure the maximum possible accuracy of the information contained in consumer reports;

(iii)   First Advantage commenced the search for Plaintiff's criminal history on February 26, 2022 and completed the report on March 2, 2022. Hence, ample time existed for First Advantage to ensure that the criminal convictions were reported accurately;

(iv)    The report prepared by First Advantage regarding Plaintiff noted that "Research [was] In Progress" for four days and further noted that "Additional handling [was] required" with respect to Plaintiff's criminal history. Despite this additional research and handling, First Advantage failed to report Plaintiff's or the class members' criminal convictions accurately;

(v)     The Order setting aside Plaintiff's judgment of guilt and restoring his civil rights has been publicly available for over a year at the time the report was furnished;

(vi)    First Advantage is a large corporation who regularly engages inside and outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others;

(vii)   First Advantage describes itself as a leader in the background reporting industry with respect to employment related consumer reports;

(viii)  First Advantage regularly furnishes consumer reports to businesses, such as Lowe's, for the purpose of making employment related decisions. Accordingly, First Advantage's failure to implement reasonable procedures had a widespread effect; and

(ix)   First Advantage profited off the sale of Plaintiff's and the class members' consumer reports containing incomplete and outdated information on a repeated basis.

87.    Plaintiff and the First Advantage Procedures Class seek damages under 15 U.S.C. § 1681n, *et seq*. Indeed, Plaintiff and the First Advantage Procedures Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

88.    In the alternative, Plaintiff and the First Advantage Procedures Class seek actual damages under 15 U.S.C. § 1681o, *et seq*. First Advantage acted negligently by failing to adopt reasonable procedures to ensure the maximum possible accuracy of information contained in consumer reports.. As such, First Advantage breached its duty of care to Plaintiff and the First Advantage Procedures Class and this breach is the direct and proximate cause of Plaintiff's and the class members' damages.

89.    Accordingly, under the FCRA, Plaintiff and the First Advantage Procedures Class seek statutory damages, reasonable cost and attorneys' fees, pre- and post-judgment interest and such other relief as the Court deems necessary, reasonable, and just.

### COUNT IV
### Violation of 15 U.S.C. § 1681k, *et seq*.
### (On Behalf of Plaintiff and the First Advantage Procedures Class)

90.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

91.    First Advantage is a "person" and a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b) and (f).

92.    Plaintiff and members of the First Advantage Procedures Class are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

93.    The FCRA declares that:

A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain

employment shall--

> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

> (2) maintain <u>strict</u> procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a) (emphasis added).

94.     First Advantage furnished consumer reports regarding Plaintiff and the First Advantage Procedures Class for employment purposes that possessed information on consumers that were likely to have an adverse effect upon a consumer's ability to obtain employment.

95.     First Advantage violated Section 1681k(a)(2) by failing to adopt strict procures designed to insure that public record information that is likely to have an adverse effect on a consumer's ability to obtain employment is complete and up to date.

96.     Criminal convictions or information showing "guilty" with respect to crimes is likely to have an adverse effect on a consumer's ability to obtain employment.

97.     Here, First Advantage reported the disposition of past criminal convictions for Plaintiff and the Class as "guilty". This was inaccurate. Records of past criminal convictions are public records under the FCRA. At the time the report was furnished, the convictions were set aside and Plaintiff's and the class members' civil rights were restored pursuant to A.R.S. § 13-905.

98.     By publishing past criminal convictions without their current disposition, First Advantage reported adverse public information that was not complete or up to date.

99.    First Advantage failed to adopt strict procedures to ensure that criminal convictions are reported with the current disposition. This constitutes a willful violation of Section 1681k(a)(2).

100.    On information and belief, First Advantage's failure to report that the criminal convictions were set aside and that civil rights were restored violated its own written policies and procedures to ensure that information contained in consumer reports is complete and up to date.

101.    Pursuant to 15 U.S.C. § 1681o, *et seq.* and 15 U.S.C. § 1681n, *et seq.*, First Advantage is liable to Plaintiff and the First Advantage Procedures Class for failing to implement and follow strict procedures to ensure that information contained in Plaintiff's and the class members' consumer reports that was likely to adversely impact their ability to obtain or keep employment was complete and up to date in violation of 15 U.S.C. § 1681k(a)(2).

102.    First Advantage's violation of 15 U.S.C. § 1681k(a)(2) was willful for at least the following reasons:

(i)     The rule that consumer reporting agencies must implement and follow strict procedures to insure that potentially adverse public record information contained in consumer reports must be complete and up to date has been the law established for decades;

(ii)    On information and belief, First Advantage adopted and then failed to follow its own written policies and procedures to ensure that information contained in consumer reports is complete and up to date;

(iii)   First Advantage commenced the search for Plaintiff's criminal history on February 26, 2022 and completed the report on March 2, 2022. Hence, ample time existed for First Advantage to ensure that the criminal convictions were up to date and complete;

(iv)    The report prepared by First Advantage regarding Plaintiff noted that "Research [was] In Progress" for four days and further noted that "Additional handling [was] required" with respect to Plaintiff's criminal history;

(v)     The Order setting aside Plaintiff's judgment of guilt and restoring his civil rights has been publicly available for over a year at the time the report was furnished;

(vi)     First Advantage is a large corporation who regularly engages inside and outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others;

(vii)     First Advantage describes itself as a leader in the background reporting industry with respect to employment related consumer reports;

(viii)     First Advantage regularly furnishes consumer reports to businesses, such as Lowe's, for the purpose of making employment related decisions. Accordingly, First Advantage's failure to implement reasonable procedures had a wide spread effect; and

(ix)     First Advantage profited off the sale of Plaintiff's and the class members' consumer reports containing incomplete and outdated information on a repeated basis.

103.     Plaintiff and the First Advantage Procedures Class seek damages under 15 U.S.C. § 1681n, *et seq.* Plaintiff and the First Advantage Procedures Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

104.     In the alternative, Plaintiff and the First Advantage Procedures Class seek actual damages under 15 U.S.C. § 1681o, *et seq.* First Advantage acted negligently by failing to adopt strict procedures to insure that adverse public record information is complete and up to date. As such, First Advantage breached its duty of care to Plaintiff and the First Advantage Procedures Class and this breach is the direct and proximate cause of Plaintiff's and the class members' damages.

105.     Accordingly, under the FCRA, Plaintiff and the First Advantage Procedures Class seek statutory damages, reasonable cost and attorneys' fees, pre- and post-judgment interest, and such other relief as the Court deems necessary, reasonable, and just.

## COUNT V
### Violation of 15 U.S.C. § 1681k, *et seq.*

**(On Behalf of Plaintiff and the First Advantage Notice Class)**

106.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

107.   First Advantage is a "person" and a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b) and (f).

108.   Plaintiff and members of the First Advantage Notice Class are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

109.   The FCRA declares that:

> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall--
>
>> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
>>
>> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a).

110.   First Advantage furnished consumer reports regarding Plaintiff and the First Advantage Notice Class for employment purposes that possessed information on consumers that were likely to have an adverse effect upon a consumer's ability to obtain employment.

111.   First Advantage failed to provide Plaintiff and the First Advantage Notice

Class with notice that First Advantage was reporting public record information to potential employers that was likely to have an adverse effect on the ability of Plaintiff and the First Advantage Notice Class to obtain employment. Further, First Advantage failed to provide Plaintiff or the other members of the First Advantage Notice Class with the name and address of the person to whom such information was being reported.

112.    By failing to provide any notice, First Advantage deprived applicants and employees of the ability to address any inaccurate or incomplete information contained within the consumer report prior to the employer's decision regarding the information.

113.    Pursuant to 15 U.S.C. § 1681o, *et seq.* and 15 U.S.C. § 1681n, *et seq.*, First Advantage is liable to Plaintiff and the First Advantage Notice Class for failing to provide notice that potentially adverse public record information was being report to potential employers in violation of 15 U.S.C. § 1681k(a)(2).

114.    First Advantage's violation of 15 U.S.C. § 1681k(a)(2) was willful for at least the following reasons:

(i)      The rule that consumer reporting agencies provide notice that potentially adverse public record information is being reported by a consumer reporting agency has been the law established for decades;

(ii)     First Advantage is a large corporation who regularly engages inside and outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others;

(iii)    First Advantage describes itself as a leader in the background reporting industry with respect to employment related consumer reports;

(iv)     First Advantage regularly furnishes consumer reports to businesses, such as Lowe's, for the purpose of making employment related decisions. Accordingly, First Advantage's failure to provide notice had a wide spread effect; and

(v)      First Advantage profited off the sale of Plaintiff's and the class members' consumer reports.

115.    Plaintiff and the First Advantage Notice Class seek damages under 15 U.S.C. § 1681n, *et seq.* Indeed, Plaintiff and the First Advantage Notice Class are entitled

1   to statutory damages of not less than $100 and not more than $1,000 for each of
2   Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

3       116.   In the alternative, Plaintiff and the First Advantage Notice Class seek actual
4   damages under 15 U.S.C. § 1681o, *et seq.* First Advantage acted negligently by failing to
5   provide notice that adverse public record information was being provided to a potential
6   employer. As such, First Advantage breached its duty of care to Plaintiff and the First
7   Advantage Notice Class and this breach is the direct and proximate cause of Plaintiff's
8   and the class members' damages.

9       117.   Accordingly, under the FCRA, Plaintiff and the First Advantage Notice
10  Class seek statutory damages, reasonable cost and attorneys' fees, and such other relief as
11  the Court deems necessary, reasonable, and just.

12                          **PRAYER FOR RELIEF**

13      WHEREFORE, Plaintiff Justin Downing, individually and on behalf of the
14  Classes, respectfully requests that this Court issue an order of judgment:

15      A.   Certifying this case as a class action on behalf of the Classes defined above,
16           appointing Justin Downing as class representative and appointing his
17           counsel as class counsel;

18      B.   Finding that Defendants' actions constitute a violation of the FCRA;

19      C.   Finding that Defendants' actions constitute a willful violation of the FCRA;

20      D.   Awarding damages, including statutory damages where applicable, to
21           Plaintiff and the Classes in amounts to be determined at trial;

22      E.   Awarding Plaintiff and the Classes their reasonable litigation expenses and
23           attorneys' fees;

24      F.   Awarding Plaintiff and the Classes pre- and post- judgment interest, to the
25           extent allowable; and

26      G.   Such further and other relief as the Court deems reasonable and just.

27                          **JURY DEMAND**

28  Plaintiff requests a trial by jury of all claims that can be so tried.

1

2                                          Respectfully submitted,

3    Dated: September 7, 2022              **JUSTIN DOWNING**, individually and on

4                                          behalf of all others similarly situated,

5
                               By:        _/s/ Penny L. Koepke_
6                                          One of Plaintiff's Attorneys

7                                          Penny L. Koepke
                                           pkoepke@hoalow.biz
8                                          MAXWELL & MORGAN, P.C.
                                           4854 E. Baseline Road, Suite 104
9                                          Mesa, Arizona 85206
                                           Tel: (480) 833-1001
10

11                                         Steven L. Woodrow*
                                             swoodrow@woodrowpeluso.com
12                                         Patrick H. Peluso*
                                             ppeluso@woodrowpeluso.com
13                                         Taylor T. Smith*
                                             tsmith@woodrowpeluso.com
14                                         Woodrow & Peluso, LLC
                                           3900 East Mexico Avenue, Suite 300
15                                         Denver, Colorado 80210
                                           Telephone: (720) 907-7628
16                                         Facsimile: (303) 927-0809

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

## eSignature Consent Form

**Consent to Use Electronic Signature**
By selecting the "Yes" option below, I hereby consent to the use of my electronic signature to execute the Authorization Form, which will appear on the following screen. I understand that my electronic signature will have the same legal effect, validity and enforceability as if I were to execute by handwritten signature. If I do not wish to have my electronic signature to have a binding effect, I must select "No" option below.

**Right to Entering into Agreement in Non-Electronic Form**
I understand that I have the right to agree to the Authorization Form on paper and to execute the Authorization Form by handwritten signature. In order to provide it in written form, I can print and upload the form in the Document Upload section upon completing my profile.

**Withdrawing My Consent and Updating Information**
I understand that I have the right to withdraw my consent to use electronic signature and the right to update my contact information at any time. If I decide at any point to withdraw my consent, I understand that the withdrawal is only prospective and shall not impact the legal effectiveness, validity or enforceability of the Authorization Form prior to the implementation of my request withdrawal. The effectiveness of the withdrawal will be within a reasonable period of time after receipt of the withdrawal. If I withdraw during the period where a screening service is in the process of being fulfilled or ordered, it may impact my application for employment, contract work or other purpose.

If I decide at any point to withdraw my consent, I may call First Advantage at (+1) 800-845-6004, or provide a signed letter via mail to the address below:
First Advantage Background Services Corp.
Consumer Center
P.O. Box 105292
Atlanta, GA 30348
Applicants based in South Asia and Pacific region (including Hong Kong, Singapore, Australia, New Zealand, Philippines and Malaysia) may instead contact the Compliance & Privacy Manager at Privacy.sapac@fadv.com or (+61) 2 9017 4300.

**Requesting a Paper Copy of My Electronic Record**
Upon request, I may obtain a paper copy of the Authorization Form by clicking 'print' before submitting. Additionally, I may call, mail a request, or email via the contact information shown above.

| | |
|---|---|
| I have read and accept the eSignature terms outlined above. | Yes |
| Date | February 26, 2022 |

## Consent

**Lowe's Background Check Acknowledgement**

I acknowledge that under certain circumstances, a full background check may be delayed. I understand

my employment may begin without the full background check results being available. If after my start date,

my background check is not approved, I understand and acknowledge that Lowe's will terminate my employment.

| | |
|---|---|
| I have read and accept the terms outlined above. | Yes |
| Date | February 26, 2022 |

## Disclosure

**DISCLOSURE REGARDING BACKGROUND REPORT**

Lowe's Companies, Inc. and/or its affiliates, including Lowe's Home Centers, LLC, ("Lowe's") may obtain a "background report" about you or your child/ward for employment purposes from a third-party consumer reporting agency. "Background report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on your or your child's/ward's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. The reports may include information regarding your or your child's/ward's history, criminal history, social security verification, motor vehicle records, verification of your education or employment history, or other background check results.

Lowe's will not request any information related to your or your child's/ward's worthiness, credit standing, or credit capacity without providing you or your child/ward, separately, with information related to the use of that information and obtaining separate authorization from you to obtain such information, where required.

Date                                                                February 26, 2022

---

## Disclosure

DISCLOSURE REGARDING INVESTIGATIVE BACKGROUND REPORT

Lowe's Companies, Inc. and/or its affiliates, including Lowe's Home Centers, LLC, ("Lowe's") may obtain for employment purposes an "investigative background report" about you or your child/ward including information as to your character, general reputation, personal characteristics and mode of living. "Investigative background report" means a background report or portion thereof in which information on your or your child's/ward's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with your or your child's/ward's neighbors, friends, or associates or with others with whom you or your child/ward are acquainted or who may have knowledge concerning your or your child's/ward's character, general reputation, personal characteristics, and/or mode of living.

You or your child/ward have the right, upon written request made within a reasonable time after receipt of this notice, to request a complete and accurate disclosure of the nature and scope of any investigative background report requested about you or your child/ward.

Along with this disclosure, you are being provided with a copy of A Summary of Your Rights under the Fair Credit Reporting Act.

Please be advised that the nature and scope of the most common form of investigative background report obtained with regard to applicants for employment is an investigation into your or your child's/ward's education and/or employment history conducted by First Advantage Consumer Disclosure Center located at P.O. Box 105292, Atlanta, GA, 30348 phone: 1-800-845-6004.

Date                                                                February 26, 2022

---

## Disclosure

FOR APPLICANTS TO LOCATIONS IN THE STATE OF WASHINGTON, PLEASE REVIEW THE SECTION "A SUMMARY OF YOUR RIGHTS UNDER THE WASHINGTON FAIR CREDIT REPORTING ACT"

Para informacion en espanol, visite https://www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20006.

A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. For more information, including information about additional rights, go to https://www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

 • You must be told if information in your file has been used against you. Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment - or to take another adverse action against you - must tell you, and must give you the name, address, and phone number of the agency that provided the information.

 • You have the right to know what is in your file. You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
  • a person has taken adverse action against you because of information in your credit report;
  • you are the victim of identify theft and place a fraud alert in your file;
  • your file contains inaccurate information as a result of fraud;
  • you are on public assistance;
  • you are unemployed but expect to apply for employment within 60 days.
 In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See https://www.consumerfinance.gov/learnmore for additional information.

Exhibit B

Filed on 12/7/2020 8:48:58 AM

**Navajo County Superior Court**
**Deanne M. Romo, Clerk**

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF NAVAJO

| | | | |
|---|---|---|---|
| **JUDGE:** | DALE P. NIELSON | **DIVISION:** | III |
| **CLERK:** | DEANNE M. ROMO | **DATE:** | 11/24/2020 |
| **DEPUTY CLERK:** | SNW | **TIME:** | 9:30 A.M. |
| **COURT REPORTER:** | Kelly Palmer | | |

## MINUTE ENTRY

**THE STATE OF ARIZONA,**

        **Plaintiff,**

**Vs.**

**JUSTIN ANDREW DOWNING,**

        **Defendant.**

**Case No. S0900CR20060047**
**S0900CR20060048**
**S0900CR20090508**

## HEARING ON THE MOTION TO SET ASIDE

    This is the date set for a hearing on the Motion to Set Aside. The record shall reflect the presence of the Defendant.

    The Court noted for the record several attempts have been made to reach the County Attorney. The Court further noted there was no information from the County Attorney regarding the Defendant's Motion to Set Aside.

    The Defendant was sworn, presented testimony and answered questions of the Court.

    **IT IS ORDERED** granting the Motion to Set Aside Judgments of Guilt to include the restoration of the Defendant's civil rights and his right to own firearms.

    Hearing adjourned at 9:33 A.M.

Copies to: NCAO, Justin Downing, Case Flow Manager, NCSO