# Exhibit A

Penny L. Koepke
pkoepke@hoalow.biz
MAXWELL & MORGAN, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Downing, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>~~Lowe's Companies, Inc.,~~<u>Lowe's Home Centers, LLC,</u> a North Carolina ~~corporation~~<u>limited liability company</u>, and First Advantage Corporation, a Delaware corporation,<br><br>        Defendants. | Case No. <u>-3:22-cv-08159-SPL</u><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

  Plaintiff Justin Downing ("Plaintiff" or "Downing") brings this <u>first amended</u> class action complaint against Defendants ~~Lowe's Companies, Inc.~~<u>Lowe's Home Centers, LLC</u> ("Lowe's") and First Advantage Corporation ("First Advantage", and collectively with Lowe's, "Defendants") to obtain redress for Defendants' serial violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA" or "Act"). Specifically, Plaintiff files the instant lawsuit to address: (1) Lowe's failure to provide lawful notices and disclosures to its job applicants and employees, (2) First Advantage's practice of failing to implement reasonable policies and procedures to ensure the maximum possible

- 1 -

accuracy of the information contained in consumer reports, and (3) First Advantage's failure to adopt strict procedures to ensure that adverse information contained in consumer reports is complete and up to date. Plaintiff seeks redress for all individuals similarly injured by the Defendants' conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      Enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies, the FCRA explicitly protects consumers from disclosure of their personal information contained in their consumer reports. To that end, employers who obtain and use consumer reports regarding their job applicants and employees are required to provide, prior to obtaining consumer reports in the first place, a clear and conspicuous disclosure, in a document consisting solely of the disclosure (*i.e.*, that stands alone), that a consumer report will be obtained for employment purposes. And for their part, when preparing the reports, consumer reporting agencies must implement and follow procedures designed to ensure maximum possible accuracy of the information they provide concerning the individuals about whom the reports relate and to ensure that the information is complete and up to date.

2.      Defendant Lowe's willfully violated the FCRA by: (1) failing to provide a standalone, upfront disclosure that Defendant may procure consumer reports about its applicants and employees, and (2) failing to provide a clear and conspicuous disclosure prior to obtaining consumer reports.

3.      Lowe's willfully violated the FCRA by failing to provide applicants or employees with a standalone disclosure that clearly and conspicuously indicates—in a document consisting *solely* of the disclosure—that Lowe's may obtain a consumer report

about them for employment purposes. That is, Lowe's provides a single disclosure that includes extraneous information regarding Lowe's supposed ability to obtain consumer reports regarding the applicant's children/wards. The disclosure also contains additional extraneous information regarding future disclosures and authorizations that may be sought.

4.      The inclusion of such extraneous information overshadows the consumer report disclosure and renders the disclosure confusing to Plaintiff and to any reasonable person. By including extraneous information, it is unclear as to whether Lowe's intends to procure a consumer report regarding the applicant, their children/wards, or both. This lack of clarity frustrates the purpose of the FCRA, which is to inform consumers and allow them a meaningful opportunity to authorize such disclosures. Plaintiff was confused by the disclosure, and had a lawful disclosure been provided, Plaintiff would not have signed it.

5.      For its part, Defendant First Advantage willfully violated the FCRA by furnishing consumer reports while failing to implement and follow reasonable procedures to ensure the maximum possible accuracy of the information contained in the report. That is, First Advantage compiled consumer reports regarding Plaintiff and class members that included inaccurate dispositions of past criminal histories.

6.      First Advantage also willfully violated, and continues to violate, the FCRA by failing to maintain (or follow) strict procedures designed to ensure that public record information is complete and up to date when it is included in consumer reports and is likely to have an adverse effect on a consumer's ability to obtain employment. Here, First Advantage furnished consumer reports relating to Plaintiff and class members containing outdated and incomplete dispositions of past criminal histories.

7.      By failing to adopt (or follow) reasonable or strict procedures as required, First Advantage furnished consumer reports to third parties that contained both false and

- 3 -

misleading information, which had an adverse effect on consumers' ability to obtain employment.

8.      Additionally, First Advantage also willfully violated the FCRA by failing to provide notice to consumers that adverse public record information was being conveyed to potential employers. First Advantage deprived applicants of an opportunity to correct the false and misleading information.

9.      As a result of Defendants' willful violations of the FCRA, Plaintiff Downing and the members of the Classes were deprived of their privacy rights guaranteed to them by federal law, and they are therefore entitled to statutory damages of at least $100 and not more than $1,000 for each willful violation. *See* 15 U.S.C. § 1681n(a)(1)(A).

## PARTIES

10.     Plaintiff Downing is a natural person and citizen of the State of Arizona. He resides in Show Low, Navajo County, Arizona.

11.     Defendant Lowe's is a North Carolina ~~corporation~~limited liability company with its principal place of business located at 1000 Lowe's Blvd, Mooresville, North Carolina 28117.

12.     Defendant First Advantage is a Delaware corporation with its principal place of business located at 1 Concourse Pkwy NE, Suite 200, Atlanta, GA 30328.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, which is a federal statute. Jurisdiction is additionally proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* ("CAFA"), because the classes each consist of over 100 people, there is minimal diversity, and the amount in controversy, when aggregated, is over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

14.     This Court has personal jurisdiction over Defendants because they conduct substantial business in this District and the unlawful conduct alleged in the Complaint occurred in this District or the unlawful decisions that lead to the violations of the FCRA set forth in this Complaint were made in this District.

15.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in or emanated from this District, and because Plaintiff resides in this District and applied for work with Lowe's in this District.

**FACTS COMMON TO PLAINTIFF AND ALL COUNTS**

16.     Lowe's is a well-known American retail company specializing in home improvement. It operates warehouse-style home improvement stores throughout the United States, including Arizona.

17.     First Advantage is a consumer reporting agency that collects and aggregates information about consumers world-wide. First Advantage generates a substantial portion of its business and income by providing background screening services to employers nationwide

18.     In or around February 2022, Plaintiff applied for a job with Lowe's at a store located in Show Low, Arizona.

19.     In or around February 2022, in connection with his employment application, Plaintiff was required to complete various acknowledgments of company disclosures, including a disclosure regarding Plaintiff's background report.

20.     Rather than provide a standalone disclosure—as the FCRA unambiguously requires—Plaintiff was presented with a document styled, "Disclosure Regarding Background Report." (*See* FCRA Disclosure, a true and accurate copy of which is attached hereto as Ex. A.) The pre-report disclosure that Lowe's provided to applicants and employees unlawfully combines disclosures to obtain consumer reports regarding

- 5 -

applicants and their children or wards. It states:

> Lowe's Companies, Inc. and/or its affiliates, including Lowe's Home Centers, LLC, ("Lowe's") may obtain a "background report" about you or your child/ward for employment purposes from a third-party consumer reporting agency. "Background report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on your or your child's/ward's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. The reports may include information regarding your or your child's/ward's history, criminal history, social security verification, motor vehicle records, verification of your education or employment history, or other background check results.
>
> Lowe's will not request any information related to your or your child's/ward's worthiness, credit standing, or credit capacity without providing you or your child/ward, separately, with information related to the use of that information and obtaining separate authorization from you to obtain such information, where required.

(*See* Ex. A).

21.     That is, Lowe's provides a single disclosure that seeks to satisfy the disclosure requirements for it to obtain a consumer report regarding both the applicants and their children, including their or their children's criminal history, motor vehicle records, credit standing, credit capacity, educational history, employment history and more.

22.     The disclosure also contains additional extraneous information: Despite initially explaining that a consumer report may contain information relating to the applicant's or their children's credit worthiness, credit standing, and credit capacity, in the very next paragraph Lowe's purports to explain that it will not request any information relates to applicant's or their children's "worthiness, credit standing, or credit capacity" unless it provides a separate disclosure and authorization for credit information.

23.     The disclosure does not standalone, nor is it clear and conspicuous. It is opaque and confusing.

24.     The inclusion of such extraneous information overshadows the consumer report disclosure and renders the disclosure confusing to Plaintiff and the other class

members. By combining the disclosure to obtain an applicant's consumer report with a disclosure to obtain information about their child or ward in a single document, and by including a confusing and conflicting explanation regarding future disclosures, it is unclear whether Lowe's intends to procure consumer reports regarding applicants, their children/wards, or both. Nowhere does Lowe's make any attempt to explain why it would need to access the consumer report of an applicant's children, wards, or other offspring. This lack of clarity frustrates the purpose of the FCRA, which is to inform consumers and allow them a meaningful opportunity to authorize such disclosures. Had a lawful disclosure been provided, Plaintiff and others would not have signed it.

25.     For its part, First Advantage furnished consumer reports to Lowe's and other potential employers without first implementing reasonable procedures to ensure the maximum possible accuracy of the information contained in the report, and failed to implement strict procedures designed to ensure that when public information contained in a consumer report is likely to have an adverse effect on a consumer's ability to obtain employment, that such sensitive information is complete and up to date.

26.     Lowe's contracted with First Advantage to compile and furnish a consumer report regarding Downing and other class members for employment purposes.

27.     On or about February 26, 2022, First Advantage commenced a search for Plaintiff's past criminal history to be included in his consumer report.

28.     After the search commenced, First Advantage noted that additional handling was required with respect to Plaintiff's past criminal history.

29.     On February 26, 2022, First Advantage noted that research was required with respect to Plaintiff's past criminal history.

30.     On March 2, 2022, First Advantage again noted that research was required with respect to Plaintiff's past criminal history.

31.     On March 2, 2022, First Advantage furnished a consumer report regarding

Plaintiff to Lowe's for employment purposes.

32.     The report included inaccurate and materially misleading information relating to Plaintiff's prior criminal history, which had a negative impact on his employment opportunities. In preparing the report, First Advantage failed to follow reasonable procedures to ensure the maximum possible accuracy of the information contained in the report. Instead, First Advantage furnished an inaccurate report containing three past criminal convictions with the disposition stated as "guilty".

33.     While Plaintiff did plead guilty to the three criminal charges between 2006 and 2009, it is not accurate to state that the disposition of those cases is "guilty".

34.     On November 24, 2020, the Navajo County Superior Court issued an Order setting aside Plaintiff's judgments of guilt (*see* Order Setting Aside Judgment of Guilt, a true and accurate copy of which is attached hereto as Ex. B), which restored Plaintiff's civil rights under Arizona law pursuant to A.R.S. § 13-905. The Order setting aside the judgments of guilt were made publicly available at https://apps.supremecourt.az.gov/publicaccess/minutes.aspx.

35.     Judgments setting aside guilt are not some arbitrary distinction. Rather, when a court sets aside a criminal conviction pursuant to A.R.S. § 13-905 and includes a certificate of second chance, the individual's civil rights are restored, including occupational rights. The restoration of rights includes the release of the individual from all barriers and disabilities in obtaining occupational licenses issued under Arizona Title 32. *See* A.R.S. § 13-905(K). Further, Arizona law provides potential employers with protection should they choose to hire individuals that have had their convictions set aside. *Id.*; *see also* A.R.S. § 12-558.03, *et seq.*

36.     By failing to inform potential employers that a prior conviction was set aside, First Advantage provides false and inaccurate information that deprives employers of critical data needed to make an informed decisions regarding potential applicants. It

also strips job applicants like Plaintiff from having the ability to attain gainful employment.

37.    Additionally, despite preparing the report with public record information that was likely to have an adverse effect on Plaintiff's ability to obtain employment, First Advantage also failed to provide any notice that the information was being furnished to Lowe's. This failure deprived Plaintiff of a meaningful opportunity to correct the inaccurate information.

38.    On or around March 10, 2022, Lowe's informed Plaintiff that he was being denied employment based in whole or in part on information contained within his consumer report.

~~38.~~39.  Based on foregoing, Plaintiff brings this suit, on behalf of himself and those similarly situated, seeking redress for Defendants' widespread and willful violations of the FCRA. Such violations entitle him, and other similarly situated persons, to statutory damages of not less than $100 and not more than $1,000 per violation.

## CLASS ACTION ALLEGATIONS

~~39.~~40.  Plaintiff brings this action pursuant to Federal Rule of Civil Procedure Rule 23(b)(3) on behalf of himself and the following Classes defined as follows:

**Lowe's Class:** All persons in the United States who (1) from a date two years prior to the filing of the initial complaint in this action to the date notice is sent to the Class; (2) applied for employment with Lowe's; (3) about whom Lowe's procured a consumer report; and (4) who were provided the same form FCRA disclosure and authorization as the disclosure and authorization form Lowe's provided to Plaintiff.

**First Advantage ~~Procedures~~ Class:** All persons in the United States (1) from a date two years prior to the filing of the initial complaint in this action to the date notice is sent to the Class; (2) about whom First Advantage provided a consumer report; (3) to any employer or potential employer; (4) where the consumer report contained a criminal disposition of "guilty"; and (5) where the consumer's conviction had been set aside pursuant to A.R.S. § 13-905.

~~**First Advantage Notice Class:** All employees or job applicants in the United States who (1) from a date two years prior to the filing of the initial complaint in this action to the date notice is sent to the Class; (2) had a consumer report prepared about them by First Advantage; (3) that contained public record information regarding any criminal conviction; (4) where First Advantage provided the consumer report to an employer or potential employer without providing any notice of the disclosure to the employee or applicant.~~

41.     Excluded from the Classes are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' officers and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, (5) Plaintiff's and Defendants' counsel, and (6) the legal representatives, successors, and assigns of any such excluded person. Plaintiff anticipates the need to amend the Complaint, including the Class Definitions, following a reasonable period for class discovery.

42.     **Numerosity:** The exact number of class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable for each of the Classes. On information and belief, there are thousands of individuals that fall into the defined Classes. Further, the class members can readily be ascertained through objective criteria, including Defendants' records.

43.     **Commonality:** Common questions of law and fact exist as to all members of the Classes for which this proceeding will provide common answers in a single stroke based upon common evidence, including:

(a)     Whether First Advantage violated the FCRA;

(b)     Whether First Advantage prepared consumer reports with inaccurate criminal dispositions;

(c)     Whether First Advantage implemented policies and procedures to ensure

maximum possible accuracy of the consumer reports that it prepares;

(d)   Whether First Advantage failed to follow its own policies and procedures to ensure the maximum possible accuracy of the consumer reports that it prepares;

(e)   Whether First Advantage implemented strict procedures to ensure that where adverse public record information reported on a consumer report is likely to impact an applicant's ability to obtain employment that the information is complete and up to date;

(f)   Whether First Advantage failed to follow its own procedures to ensure that adverse public record information that is reported on a consumer report is complete and up to date;

(g)   Whether First Advantage's violations of the FCRA were willful;

(h)   Whether Lowe's conduct described herein violated the FCRA;

(i)   Whether Lowe's has procured or caused to be procured consumer reports about job applicants and employees;

(c)   Whether Lowe's disclosure violates the FCRA's requirement that the pre-report disclosure be clear and conspicuous in a document consisting solely of the disclosure; and

(j)   Whether Lowe's violations of the FCRA were willful.

44.   **Typicality:** As a result of Defendants' uniform and repeated pattern of providing and preparing consumer reports, Plaintiff and the Class Members suffered the same injury and similar damages. If Defendants' actions violated the FCRA as to Plaintiff, then it violated the FCRA as to all Class Members. Thus, Plaintiff's claims are typical of the claims of the other Class Members.

45.   **Adequate Representation:** Plaintiff is a member of the Classes and both he and his counsel will fairly and adequately represent and protect the interests of the Classes, as neither has interests adverse to those of the Class Members and Defendants

- 11 -

have no defenses unique to Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex litigation and class actions including class actions related to the procurement of consumer reports for employment purposes under the Fair Credit Reporting Act. Further, Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the financial resources to do so.

46.    **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed individualized questions. Irrespective of any given Class Member's situation, the answer to whether Defendants' conduct described herein repeatedly violated the FCRA is the same for everyone—a resounding "yes"—and the same will be proven using common evidence.

47.    **Superiority and Manageability:** A class action is superior to all other methods of adjudicating the controversy. Joinder of all class members is impractical, and the damages suffered by/available to any individual Class Members will likely be small relative to the cost associated with prosecuting a lawsuit. Thus, the expense of litigating an individual action will likely prohibit the Class Members from obtaining effective relief for Defendants' misconduct. In addition, there are numerous common factual and legal questions that could result in inconsistent verdicts should there be several successive trials. In contrast, a class action will present far fewer management difficulties, and it will increase efficiency and decrease expense. Further, class-wide adjudication will also ensure a uniform decision for the Class Members.

48.    Plaintiff reserves the right to revise the definition of the Classes as necessary based upon information obtained in discovery.

### COUNT I
### Violation of 15 U.S.C. § 1681b, *et seq.*
### (On Behalf of Plaintiff and the Lowe's Class)

49.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

50.    The FCRA declares that:

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists <u>solely of the disclosure</u>, that a consumer report may be obtained for employment purposes . . . .

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

51.    The FCRA defines a consumer report as:

. . . any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumers' credit worthiness, credit standing, cred-it capacity, character, general reputation, personal characteristics, or mode of living which is used or excepted to be used or collected in whole or in part for the purpose of serving as a factor establishing the consumer's eligibility for . . .

(B) employment purposes . . .

15 U.S.C. § 1681a(d)(1).

52.    Lowe's employment background checks are consumer reports.

53.    The pre-report disclosure that Lowe's provided to applicants and employees unlawfully combines a disclosure to obtain consumer reports about them with a disclosure to obtain consumer reports about their children or wards. (Ex. A.) Lowe's provides a single disclosure that confusingly combines information about both the applicants themselves as well as regarding their children or wards, including their or their children's/ward's criminal history, motor vehicle records, credit standing, credit capacity, educational history, employment history and more. (*Id.*)

54.    The disclosure also contains additional extraneous information that appears confusing and contradictory. (*Id.*) Despite explaining that a consumer report may contain information relating to the applicant's or their children's/ward's credit worthiness, credit standing, and credit capacity, in the very next paragraph Lowe's purports to explain that it

- 13 -

will not request any information relates to applicant's or their children's/ward's "worthiness, credit standing, or credit capacity" unless it provides a separate disclosure and authorization for such credit information. (*Id.*)

55.     By combining the applicant's and their children's/ward's disclosure into one document, and by including a confusing and conflicting explanation regarding disclosures, Lowe's disclosure cannot be said to "stand alone" in a document that consists solely of the disclosure. A reasonable person would not have understood or authorized the reports had an appropriate disclosures been provided. Plaintiff and the other class members wouldn't have authorized the reports had appropriate disclosures been provided.

56.     Defendant procured consumer reports with respect to Plaintiff and the Lowe's Class. The disclosures provided to Plaintiff were the same or substantially the same as the one provided to all Lowe's Class members. Thus, Defendant uniformly violated the FCRA rights of all Class members in the same way and, in the process, violated their right to information and their privacy rights as delineated by Congress.

57.     Defendant's violation of 15 U.S.C. § 1681b(b)(2)(A)(i) was willful for at least the following reasons:

(i)     The rule that FRCA disclosures consist "solely" of that disclosure has been the law established for well over a decade.

(ii)    Lowe's is a large ~~corporation~~company who regularly engages outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others.

(iii)   Lowe's previously settled a class action lawsuit for alleged violations of the FCRA's stand alone disclosure requirements. As such, its failure to comply with the FCRA cannot be seen as anything other than a willful defiance of the Act's requirements.

(iv)    Lowe's inclusion of the disclosures relating to applicant's children or wards was intentional and serves no purpose to the vast majority of job applicants, including Plaintiff; and

- 14 -

(v)     Clear judicial and administrative guidance—dating back to at least the 1990s—regarding a ~~corporation's~~company's FCRA responsibilities exists and is readily available explaining that such disclosures must stand-alone. This readily-available guidance means Lowe's either was aware of its responsibilities or plainly should have been aware of its responsibilities but ignored them and violated the FCRA anyway.

(vi)    The Ninth Circuit has clearly articulated the law in this area in a series of cases, beginning in 2017: *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017); *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019); and *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1095 (9th Cir. 2020). Thus, at this point in time there is no excuse for a company like Lowe's to be in noncompliance with the FCRA's clear and unambiguous requirements.

58.     Plaintiff and the Lowe's Class seek damages under 15 U.S.C. § 1681n, *et seq.* Indeed, Plaintiff and the Lowe's Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

59.     In the alternative, Plaintiff and the Lowe's Class seek actual damages under 15 U.S.C. § 1681o, *et seq.* Lowe's acted negligently by failing to provide a standalone disclosure. Had Lowe's provided a standalone disclosure, Plaintiff and the class members would not have authorized the procurement of their reports. As such, Lowe's breached its duty of care to Plaintiff and the Lowe's Class and this breach is the direct and proximate cause of Plaintiff's and the class members' damages. Plaintiff seeks actual damages in an amount to be proven at trial or, at a minimum, seeks nominal damages.

60.     Accordingly, under the FCRA, Plaintiff and the Lowe's Class seek statutory damages, reasonable cost and attorneys' fees, pre- and post-judgment interest, and such other relief as the Court deems necessary, reasonable, and just.

## COUNT II
### Violation of 15 U.S.C. § 1681b, *et seq.*
### (On Behalf of Plaintiff and the Lowe's Class)

61.     Plaintiff incorporates by reference the foregoing allegations as if fully set

- 15 -

forth herein.

62.    The FCRA declares that:

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a <u>clear and conspicuous</u> disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes . . . .

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

63.    The FCRA defines a consumer report as:

. . . any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumers' credit worthiness, credit standing, cred-it capacity, character, general reputation, personal characteristics, or mode of living which is used or excepted to be used or collected in whole or in part for the purpose of serving as a factor establishing the consumer's eligibility for . . .

(B) employment purposes . . .

15 U.S.C. § 1681a(d)(1).

64.    Lowe's background checks are consumer reports.

65.    In addition to failing to stand-alone, Lowe's disclosure also willfully violated the FCRA by not being clear and conspicuous. The disclosure repeatedly and confusingly informs Plaintiff and the Class Members that Lowe's may obtain consumer reports regarding both them and their children or wards. The scope of the consumer reports can also include information concerning the applicant's or their children's or ward's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living, history, criminal history, social security verification, motor vehicle records, verification of your education or employment history, or other background check results. The inclusion of multiple disclosures regarding

applicants and their children or wards renders the disclosure confusing and cannot be said to be "clear and conspicuous".

66.     The disclosure also confusingly includes conflicting information regarding the procurement of credit information. Again, Lowe's discloses that a consumer report may contain information relating to the applicant's or their children's credit worthiness, credit standing, and credit capacity. Then, in the very next paragraph, Lowe's purports to explain that it will not request any information related to applicant's or their children's "worthiness, credit standing, or credit capacity" unless it provides a separate disclosure and authorization for credit information. The unnecessary inclusion of this conflicting information detracts from the purpose of the disclosure and renders the disclosure confusing.

67.     In short, the pre-report disclosure that Lowe's provided to Plaintiff and the Lowe's Class members willfully violated the FCRA by not being clear and conspicuous. Indeed, a reasonable person would have been confused by the disclosure.

68.     Plaintiff and the other class members wouldn't have authorized the reports had appropriate disclosures been provided.

69.     Defendant procured consumer reports with respect to Plaintiff and the Lowe's Class. The disclosures provided to Plaintiff were the same or substantially the same as the one provided to all Lowe's Class members. Thus, Defendant uniformly violated the FCRA rights of all Class members in the same way and, in the process, violated their right to information and their privacy rights as delineated by Congress.

70.     Defendant's violation of 15 U.S.C. § 1681b(b)(2)(A)(i) was willful for at least the following reasons:

(i)     The rule that FRCA disclosures be "clear and conspicuous" has been the law established for well over a decade;

(ii)    Lowe's is a large ~~corporation~~company who regularly engages outside counsel—it had ample means and opportunity to seek legal advice

regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others;

(iii)   Lowe's previously settled a class action lawsuit for alleged violations of the FCRA's clear and conspicuous disclosure requirements. As such, its failure to comply with the FCRA cannot be seen as anything other than a willful defiance of the Act's requirements;

(iv)   Lowe's inclusion of the disclosures relating to applicant's children or wards was intentional and serves no purpose to the vast majority of job applicants, including Plaintiff; and

(v)   Clear judicial and administrative guidance—dating back to at least the 1990s—regarding a ~~corporation's~~company's FCRA responsibilities exists and is readily available explaining that such disclosures must be clear and conspicuous. This readily-available guidance means Lowe's either was aware of its responsibilities or plainly should have been aware of its responsibilities but ignored them and violated the FCRA anyway.

(vi)   The Ninth Circuit has clearly articulated the law in this area in a series of cases, beginning in 2017: *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017); *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019); and *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1095 (9th Cir. 2020). Thus, at this point in time there is no excuse for a company like Lowe's to be in noncompliance with the FCRA's clear and unambiguous requirements.

71.   Plaintiff and the Lowe's Class seek damages under 15 U.S.C. § 1681n, *et seq.* Indeed, Plaintiff and the Lowe's Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

72.   In the alternative, Plaintiff and the Lowe's Class seek actual damages under 15 U.S.C. § 1681o, *et seq.* Lowe's acted negligently by failing to provide a disclosure that was clear and conspicuous. Had Lowe's provided a clear and conspicuous disclosure, Plaintiff and the class members would not have authorized the procurement of their reports. As such, Lowe's breached its duty of care to Plaintiff and the Lowe's Class and this breach is the direct and proximate cause of Plaintiff's and the class members'

damages.  Plaintiff seeks actual damages in an amount to be proven at trial or, at a minimum, seeks nominal damages.

73.     Accordingly, under the FCRA, Plaintiff and the Lowe's Class seek statutory damages, reasonable cost and attorneys' fees, pre- and post-judgment interest, and such other relief as the Court deems necessary, reasonable, and just.

### COUNT III
#### Violation of 15 U.S.C. § 1681e, *et seq.*
#### (On Behalf of Plaintiff and the First Advantage ~~Procedures~~ Class)

74.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

75.     First Advantage is a "person" and a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b) and (f).

76.     Plaintiff and members of the First Advantage ~~Procedures~~ Class are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

77.     The FCRA declares that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

78.     First Advantage prepared inaccurate and materially misleading consumer reports relating to Plaintiff's prior criminal history, which had a negative impact on his employment opportunities.

79.     In preparing the report, First Advantage failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained in the report. Indeed, First Advantage furnished a report containing three prior criminal convictions with the disposition stated as "guilty". This was inaccurate.

80.     While Plaintiff pleaded guilty to the three charges between 2006 and 2009, he has since taken steps to rehabilitate his standing in his community such that the

disposition is no longer "guilty".

81.     On November 24, 2020, the Navajo County Superior Court issued an Order setting aside Plaintiff's judgments of guilt (*see* Ex. B), which restored Plaintiff's civil rights under Arizona law pursuant to A.R.S. § 13-905. The Order setting aside the judgments of guilt were made publicly available at https://apps.supremecourt.az.gov/publicaccess/minutes.aspx.

82.     The judgments setting aside guilt are not the same as a criminal conviction. Rather, when a court sets aside a criminal conviction pursuant to A.R.S. § 13-905 and includes a certificate of second chance, the individual's civil rights are restored, including occupational rights. The restoration of rights includes the release of the individual from all barriers and disabilities in obtaining occupational licenses issued under Arizona Title 32. *See* A.R.S. § 13-905(K). Further, Arizona law provides potential employers with protection should they choose to hire individuals that have had their convictions set aside. *Id.*; *see also* A.R.S. § 12-558.03, *et seq.*

83.     By failing to inform potential employers that a prior conviction was set aside, First Advantage robs employers of critical information to make an informed decision regarding potential applicants and the potential risks associated with hiring applicants.

84.     By failing to adopt adequate procedures, First Advantage caused Plaintiff and the class members actual harm by preparing and providing inaccurate and materially misleading consume reports to third parties.

84.85.  On information and belief, First Advantage has prepared more than one report regarding Plaintiff that contained the same inaccurate information.

85.86.  On information and belief, First Advantage's inclusion of the "guilty" disposition on Plaintiff's consumer report violated its own written policies and procedures to ensure the maximum possible accuracy of the information contained in consumer reports.

- 20 -

~~86.~~87. Pursuant to 15 U.S.C. § 1681o, *et seq.* and 15 U.S.C. § 1681n, *et seq.*, First Advantage is liable to Plaintiff and the First Advantage ~~Procedures~~ Class for failing to implement and follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's and the class members' consumer reports in violation of 15 U.S.C. § 1681e(b).

~~87.~~88. Defendant's violation of 15 U.S.C. § 1681e(b) was willful for at least the following reasons:

(i)     The rule that consumer reporting agencies must implement and follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumer reports has been the law established for decades;

(ii)    On information and belief, First Advantage adopted and then failed to follow its own written policies and procedures to ensure the maximum possible accuracy of the information contained in consumer reports;

(iii)   First Advantage commenced the search for Plaintiff's criminal history on February 26, 2022 and completed the report on March 2, 2022. Hence, ample time existed for First Advantage to ensure that the criminal convictions were reported accurately;

(iv)    The report prepared by First Advantage regarding Plaintiff noted that "Research [was] In Progress" for four days and further noted that "Additional handling [was] required" with respect to Plaintiff's criminal history. Despite this additional research and handling, First Advantage failed to report Plaintiff's or the class members' criminal convictions accurately;

(v)     The Order setting aside Plaintiff's judgment of guilt and restoring his civil rights has been publicly available for over a year at the time the report was furnished;

(vi)    First Advantage is a large corporation who regularly engages inside and outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others;

(vii)   First Advantage describes itself as a leader in the background reporting industry with respect to employment related consumer reports;

(viii)   First Advantage regularly furnishes consumer reports to businesses, such as Lowe's, for the purpose of making employment related decisions. Accordingly, First Advantage's failure to implement reasonable procedures had a widespread effect; and

(ix)   First Advantage profited off the sale of Plaintiff's and the class members' consumer reports containing incomplete and outdated information on a repeated basis.

88.89. Plaintiff and the First Advantage ~~Procedures~~ Class seek damages under 15 U.S.C. § 1681n, *et seq.* Indeed, Plaintiff and the First Advantage ~~Procedures~~ Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

89.90. In the alternative, Plaintiff and the First Advantage ~~Procedures~~ Class seek actual damages under 15 U.S.C. § 1681o, *et seq.* First Advantage acted negligently by failing to adopt reasonable procedures to ensure the maximum possible accuracy of information contained in consumer reports~~.~~. As such, First Advantage breached its duty of care to Plaintiff and the First Advantage ~~Procedures~~ Class and this breach is the direct and proximate cause of Plaintiff's and the class members' damages. Plaintiff seeks actual damages in an amount to be proven at trial or, at a minimum, seeks nominal damages.

90.91. Accordingly, under the FCRA, Plaintiff and the First Advantage ~~Procedures~~ Class seek statutory damages, reasonable cost and attorneys' fees, pre- and post-judgment interest and such other relief as the Court deems necessary, reasonable, and just.

### COUNT IV
**Violation of 15 U.S.C. § 1681k, *et seq.***
**(On Behalf of Plaintiff and the First Advantage ~~Procedures~~ Class)**

91.92. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

92.93. First Advantage is a "person" and a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b) and (f).

93.94. Plaintiff and members of the First Advantage ~~Procedures~~ Class are

"consumers" as that term is defined by 15 U.S.C. § 1681a(c).

~~94.~~95. The FCRA declares that:

A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall--

> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

> (2) maintain <u>strict</u> procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a) (emphasis added).

~~95.~~96. First Advantage furnished consumer reports regarding Plaintiff and the First Advantage ~~Procedures~~ Class for employment purposes that possessed information on consumers that were likely to have an adverse effect upon a consumer's ability to obtain employment.

~~96.~~97. First Advantage violated Section 1681k(a)(2) by failing to adopt strict procures designed to insure that public record information that is likely to have an adverse effect on a consumer's ability to obtain employment is complete and up to date.

<u>98.   First Advantage also failed to provide Plaintiff and the First Advantage Class with notice that First Advantage was reporting public record information to potential employers that was likely to have an adverse effect on the ability of Plaintiff</u>

- 23 -

and the First Advantage Class to obtain employment. Further, First Advantage failed to provide Plaintiff or the other members of the First Advantage Class with the name and address of the person to whom such information was being reported.

97.99. Criminal convictions or information showing "guilty" with respect to crimes is likely to have an adverse effect on a consumer's ability to obtain employment.

98.100.    Here, First Advantage reported the disposition of past criminal convictions for Plaintiff and the Class as "guilty". This was inaccurate. Records of past criminal convictions are public records under the FCRA. At the time the report was furnished, the convictions were set aside and Plaintiff's and the class members' civil rights were restored pursuant to A.R.S. § 13-905.

99.101.    By publishing past criminal convictions without their current disposition, First Advantage reported adverse public information that was not complete or up to date.

100.102.    First Advantage failed to adopt strict procedures to ensure that criminal convictions are reported with the current disposition. This constitutes a willful violation of Section 1681k(a)(2).

101.103.    On information and belief, First Advantage's failure to report that the criminal convictions were set aside and that civil rights were restored violated its own written policies and procedures to ensure that information contained in consumer reports is complete and up to date.

104.    By failing to adopt strict procedures or provide any notice, First Advantage harmed applicant and employees by conveying inaccurate information regarding their criminal history to third parties and deprived applicants and employees of the ability to address any inaccurate or incomplete information contained within the consumer report prior to the employer's decision regarding the information.

102.105.    Pursuant to 15 U.S.C. § 1681o, *et seq.* and 15 U.S.C. § 1681n, *et seq.*, First Advantage is liable to Plaintiff and the First Advantage Procedures Class

forClass for failing to provide notice that potentially adverse public record information was being reported or by failing to implement and follow strict procedures to ensure that information contained in Plaintiff's and the class members' consumer reports that was likely to adversely impact their ability to obtain or keep employment was complete and up to date in violation of 15 U.S.C. § 1681k(a)(2).

103.106.    First Advantage's violation of 15 U.S.C. § 1681k(a)(2) was willful for at least the following reasons:

(i)    The rule that consumer reporting agencies must implement and follow strict procedures to insure that potentially adverse public record information contained in consumer reports must be complete and up to date has been the law established for decades;

(ii)    The rule that consumer reporting agencies provide notice that potentially adverse public record information is being reported by a consumer reporting agency has been the law established for decades;

(ii)(iii)On information and belief, First Advantage adopted and then failed to follow its own written policies and procedures to ensure that information contained in consumer reports is complete and up to date;

(iii)(iv)    First Advantage commenced the search for Plaintiff's criminal history on February 26, 2022 and completed the report on March 2, 2022. Hence, ample time existed for First Advantage to ensure that the criminal convictions were up to date and complete;

(iv)(v) The report prepared by First Advantage regarding Plaintiff noted that "Research [was] In Progress" for four days and further noted that "Additional handling [was] required" with respect to Plaintiff's criminal history;

(v)(vi) The Order setting aside Plaintiff's judgment of guilt and restoring his civil rights has been publicly available for over a year at the time the report was furnished;

(vi)(vii)    First Advantage is a large corporation who regularly engages inside and outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others;

(vii)(viii)    First Advantage describes itself as a leader in the background reporting industry with respect to employment related consumer reports;

(viii)(ix)    First Advantage regularly furnishes consumer reports to businesses, such as Lowe's, for the purpose of making employment related decisions. Accordingly, First Advantage's failure to implement reasonable procedures had a wide spread effect; and

(ix)(x) First Advantage profited off the sale of Plaintiff's and the class members' consumer reports containing incomplete and outdated information on a repeated basis.

104.107.    Plaintiff and the First Advantage Procedures Class seek damages under 15 U.S.C. § 1681n, *et seq.* Plaintiff and the First Advantage Procedures Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

105.108.    In the alternative, Plaintiff and the First Advantage Procedures Class seek actual damages under 15 U.S.C. § 1681o, *et seq.* First Advantage acted negligently by failing to adopt strict procedures to insure that adverse public record information is complete and up to date. As such, First Advantage breached its duty of care to Plaintiff and the First Advantage Procedures Class and this breach is the direct and proximate cause of Plaintiff's and the class members' damages. Plaintiff seeks actual damages in an amount to be proven at trial or, at a minimum, seeks nominal damages.

106.    Accordingly, under the FCRA, Plaintiff and the First Advantage Procedures Class seek statutory damages, reasonable cost and attorneys' fees, pre- and post-judgment interest, and such other relief as the Court deems necessary, reasonable, and just.

**COUNT V**
**Violation of 15 U.S.C. § 1681k, *et seq.***
**(On Behalf of Plaintiff and the First Advantage Notice Class)**

110.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

111.    First Advantage is a "person" and a "consumer reporting agency" as

- 26 -

1  defined by 15 U.S.C. § 1681a(b) and (f).

2      112.   Plaintiff and members of the First Advantage Notice Class are "consumers"

3  as that term is defined by 15 U.S.C. § 1681a(c).

4      113.   The FCRA declares that:

5      A consumer reporting agency which furnishes a consumer report for

6      employment purposes and which for that purpose compiles and reports items

       of information on consumers which are matters of public record and are

7      likely to have an adverse effect upon a consumer's ability to obtain

8      employment shall—

9          (1) at the time such public record information is reported to the

10         user of such consumer report, notify the consumer of the fact

           that public record information is being reported by the

11         consumer reporting agency, together with the name and

12         address of the person to whom such information is being

           reported; or

13         (2) maintain strict procedures designed to insure that whenever

14         public record information which is likely to have an adverse

15         effect on a consumer's ability to obtain employment is reported

           it is complete and up to date. For purposes of this paragraph,

16         items of public record relating to arrests, indictments,

17         convictions, suits, tax liens, and outstanding judgments shall

           be considered up to date if the current public record status of

18         the item at the time of the report is reported.

19  15 U.S.C. § 1681k(a).

20      118.   First Advantage furnished consumer reports regarding Plaintiff and the

21  First Advantage Notice Class for employment purposes that possessed information on

22  consumers that were likely to have an adverse effect upon a consumer's ability to obtain

23  employment.

24      119.   First Advantage failed to provide Plaintiff and the First Advantage Notice

25  Class with notice that First Advantage was reporting public record information to

26  potential employers that was likely to have an adverse effect on the ability of Plaintiff

27  and the First Advantage Notice Class to obtain employment. Further, First Advantage

28

failed to provide Plaintiff or the other members of the First Advantage Notice Class with the name and address of the person to whom such information was being reported.

120.    By failing to provide any notice, First Advantage deprived applicants and employees of the ability to address any inaccurate or incomplete information contained within the consumer report prior to the employer's decision regarding the information.

121.    Pursuant to 15 U.S.C. § 1681o, *et seq.* and 15 U.S.C. § 1681n, *et seq.*, First Advantage is liable to Plaintiff and the First Advantage Notice Class for failing to provide notice that potentially adverse public record information was being report to potential employers in violation of 15 U.S.C. § 1681k(a)(2).

122.    First Advantage's violation of 15 U.S.C. § 1681k(a)(2) was willful for at least the following reasons:

(cxxiii)(i)    The rule that consumer reporting agencies provide notice that potentially adverse public record information is being reported by a consumer reporting agency has been the law established for decades;

(cxxiv)    First Advantage is a large corporation who regularly engages inside and outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others;

(cxxv) First Advantage describes itself as a leader in the background reporting industry with respect to employment related consumer reports;

(cxxvi)    First Advantage regularly furnishes consumer reports to businesses, such as Lowe's, for the purpose of making employment related decisions. Accordingly, First Advantage's failure to provide notice had a wide spread effect; and

(cxxvii)    First Advantage profited off the sale of Plaintiff's and the class members' consumer reports.

128.    Plaintiff and the First Advantage Notice Class seek damages under 15 U.S.C. § 1681n, *et seq.* Indeed, Plaintiff and the First Advantage Notice Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

1   ~~129.   In the alternative, Plaintiff and the First Advantage Notice Class seek actual~~
2   ~~damages under 15 U.S.C. § 1681o, *et seq*. First Advantage acted negligently by failing to~~
3   ~~provide notice that adverse public record information was being provided to a potential~~
4   ~~employer. As such, First Advantage breached its duty of care to Plaintiff and the First~~
5   ~~Advantage Notice Class and this breach is the direct and proximate cause of Plaintiff's~~
6   ~~and the class members' damages.~~
7   ~~130.~~109.   ~~Accordingly, under the FCRA, Plaintiff and the First Advantage~~
8   ~~Notice Class seek statutory damages, reasonable cost and attorneys' fees, and such other~~
9   ~~relief as the Court deems necessary, reasonable, and just.~~

10                          **PRAYER FOR RELIEF**

11       WHEREFORE, Plaintiff Justin Downing, individually and on behalf of the
12   Classes, respectfully requests that this Court issue an order of judgment:

13       A.   Certifying this case as a class action on behalf of the Classes defined above,
14            appointing Justin Downing as class representative and appointing his
15            counsel as class counsel;

16       B.   Finding that Defendants' actions constitute a violation of the FCRA;

17       C.   Finding that Defendants' actions constitute a willful violation of the FCRA;

18       D.   Awarding damages, including statutory damages where applicable, to
19            Plaintiff and the Classes in amounts to be determined at trial;

20       E.   Awarding Plaintiff and the Classes their reasonable litigation expenses and
21            attorneys' fees;

22       F.   Awarding Plaintiff and the Classes pre- and post- judgment interest, to the
23            extent allowable; and

24       G.   Such further and other relief as the Court deems reasonable and just.

25                          **JURY DEMAND**

26   Plaintiff requests a trial by jury of all claims that can be so tried.

27

28
                          - 29 -

Respectfully submitted,

Dated: ~~September 7~~October 27, 2022     **JUSTIN DOWNING**, individually and on behalf of all others similarly situated,

By:    /s/ ~~Penny L. Koepke~~ *Taylor T. Smith*

One of Plaintiff's Attorneys

Penny L. Koepke
pkoepke@hoalow.biz
MAXWELL & MORGAN, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

Steven L. Woodrow* (admitted *pro hac vice*)
   swoodrow@woodrowpeluso.com
Patrick H. Peluso* (admitted *pro hac vice*)
   ppeluso@woodrowpeluso.com
Taylor T. Smith* (admitted *pro hac vice*)
   tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on October 27, 2022.

/s/ Taylor T. Smith

- 30 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28