**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Downing,<br><br>　　　　　Plaintiff,<br>vs.<br><br>Lowe's Companies Incorporated, et al.,<br><br>　　　　　Defendants. | No. CV-22-08159-PCT-SPL<br><br>**ORDER** |

Before the Court is Defendant First Advantage Corporation's ("First Advantage" or "Defendant") Motion to Dismiss/Strike Plaintiff's Class Claims (the "Motion") (Doc. 15). Defendant requests that this Court dismiss Counts III and IV of Plaintiff Justin Downing's ("Plaintiff") Amended Complaint (Doc. 11) to the extent those claims are asserted as class claims. Defendant's Motion has been fully briefed and is ready for review. (Docs. 15, 22, & 25). For the following reasons, the Motion is denied.[1]

**I.    BACKGROUND**

In February 2022, Plaintiff applied for a job with Defendant Lowe's Companies Incorporated ("Lowe's"). (Doc. 11 at 5). As part of the hiring process, Plaintiff was required to submit to a background check. (*Id.*). Lowe's contracted with First Advantage—a consumer reporting agency ("CRA") that provides, among other things, "background

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending Motion suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

screening services to employers nationwide"—to compile and furnish the background report. (*Id.* at 5, 7). Between February 26 and March 2, 2022, First Advantage "commenced a search for Plaintiff's past criminal history to be included in his consumer report." (*Id.*). On March 2, 2022, First Advantage completed the background report and provided it to Lowe's. (*Id.*). On March 10, 2022, Lowe's informed Plaintiff that he was being denied employment "based in whole or in part on information contained within his consumer report." (*Id.* at 8–9). Plaintiff alleges that the background report inaccurately included three past criminal convictions with the disposition stated as "guilty." (*Id.* at 7). Although Plaintiff admits to pleading guilty to three criminal charges between 2006 and 2009, he contends that "it is not accurate to state that the disposition of those cases is 'guilty'" because, on November 24, 2020, the three judgments of guilt were set aside by the Navajo County Superior Court, pursuant to A.R.S. § 13-905. (*Id.* at 7–8).

On September 8, 2022, Plaintiff filed this action against Defendants Lowe's and First Advantage.[2] (*See* Doc. 1). Plaintiff filed it as a class action suit, asserting his claims on behalf of himself and all those similarly situated. (*Id.* at 9). The Amended Complaint defines two separate classes—the "Lowe's Class" and the "First Advantage Class." (*Id.*). Only the First Advantage Class is relevant for purposes of this Order. The Amended Complaint defines the First Advantage Class as follows:

> All persons in the United States (1) from a date two years prior to the filing of the initial complaint in this action to the date notice is sent to the Class; (2) about whom First Advantage provided a consumer report; (3) to any employer or potential employer; (4) where the consumer report contained a criminal disposition of "guilty"; and (5) where the consumer's conviction had been set aside pursuant to A.R.S. § 13-905.

(Doc. 11 at 9). Plaintiff alleges that Defendants' actions—relating to the procurement, compiling, and furnishing of the background report upon which his denial of employment was based—violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

---

[2] On October 27, 2022, Plaintiff filed the Amended Complaint (Doc. 11), which remains the operative complaint in this matter.

2

(*Id.* at 1–4). In Counts I and II, Plaintiff and the Lowe's Class assert claims against Lowe's for violation of § 1681b(b)(2)(A)(i)'s "standalone" and "clear and conspicuous" disclosure requirements. (*Id.* at 12–18). In Count III, Plaintiff and the First Advantage Class assert a claim against First Advantage for violation of § 1681e(b). (*Id.* at 18–21). Finally, in Count IV, Plaintiff and the First Advantage Class assert a claim against First Advantage for violation of § 1681k(a). (*Id.* at 21–25).

## II. <u>LEGAL STANDARDS</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft*, 556 U.S. at 678. Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

Rule 12(f) provides the Court with authority to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Although generally disfavored, a motion to strike may be granted where necessary to spare the parties the time and expense associated with 'litigating spurious issues.'" *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 833–34 (D. Ariz. 2016) (quoting *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983)). "A successful motion to strike must show that the law is clear beyond reasonable dispute and that the relevant claim or defense could not succeed under any set of circumstances." *Id.* at 834 (citing *Sanders v. Apple, Inc.*, 672 F.Supp.2d 978, 990 (N.D.Cal.2009)). "The motion to strike 'was never intended to furnish an

opportunity for the determination of disputed and substantial questions of law.'" *Id.* (quoting *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir.1984)). "Moreover, even a purely legal question will not be decided on a motion to strike if discovery might provide useful context for decision or render the question moot." *Id.* (citations omitted). As with motions to dismiss under Rule 12(b)(6), "Rule 12(f) requires the Court to accept the non-moving party's well-pleaded facts as true and to draw all reasonable inferences in favor of that party." *Id.* (citing *Farm Credit Bank of Spokane v. Parsons*, 758 F.Supp. 1368, 1371 n. 4 (D. Mont.1990)).

## III.   DISCUSSION

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). In pursuing these goals, the FCRA "regulates the creation and the use of consumer reports by [CRAs] for certain specified purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment."[3] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334–35 (2016) (citations omitted) (internal quotations omitted). "[T]he statute imposes on [CRAs] a panoply of procedural obligations and creates a private right of action for consumers to enforce compliance." *Gomez v. EOS CCA*, No. CV-18-02740-PHX-JAT (DMF), 2020 WL 3271749, at *2 (D. Ariz. June 17, 2020) (citing *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113–14 (9th Cir. 2017)). Specifically at issue in this case are two FCRA provisions: §§ 1681e(b) and 1681k(a). Under § 1681e(b), a CRA preparing a consumer background report for employment purposes must "follow reasonable procedures to assure maximum

---

[3] There is no dispute that the employment background report prepared by First Advantage in this case constitutes a "consumer report" under the FCRA. *See* § 1681a(d)(1) (defining "consumer report" as "any written . . . communication of any information by a [CRA] bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used . . . for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes.").

possible accuracy of the information concerning the individual about whom the report relates." *Abrogina v. Kentech Consulting, Inc.*, No. 16cv0662 DMS (WVG), 2023 WL 3311858, at *2 (S.D. Cal. May 8, 2023) (quoting § 1681e(b)). Section 1681k(a), on the other hand, "provides that when a [CRA] furnishes a background report for employment purposes based on public record information, and the information disclosed may have an adverse impact on an individual's ability to obtain employment, the agency must maintain 'strict procedures' to ensure that the information furnished is 'complete and up to date.'" *Id.* (quoting § 1681k(a)(2)). A CRA may alternatively meet its § 1681k(a) obligations by notifying the consumer "of the fact that public record information is being reported by the [CRA], together with the name and address of the person to whom such information is being reported." § 1681k(a)(1).

As noted above, Plaintiff in this case alleges—on behalf of himself and the First Advantage Class—that First Advantage violated §§ 1681e(b) and 1681k(a). (Doc. 11 at 18–25). First, Plaintiff alleges that First Advantage failed to follow reasonable procedures to assure maximum possible accuracy of the information contained in the background report it prepared, in violation of § 1681e(b). (*Id.* at 18). Second, Plaintiff alleges that First Advantage violated § 1681k(a) by failing to (i) provide Plaintiff and the First Advantage Class with notice that First Advantage was reporting public record information to potential employers that was likely to have an adverse effect on the ability of Plaintiff and the class members to obtain employment and (ii) adopt strict procedures designed to ensure that public record information that is likely to have an adverse effect on a consumer's ability to obtain employment is complete and up to date. (*Id.* at 21–22).

Defendant requests that this Court dismiss or strike these two claims against First Advantage to the extent Plaintiff brings them on behalf of the First Advantage Class.[4] (Doc. 15 at 2). Defendant argues that the motion to dismiss stage is an appropriate time for this

---

[4] "First Advantage does *not* seek to dismiss [Plaintiff's §§ 1681e(b) and 1681k(a) claims] to the extent [Plaintiff] assert[s those] claims solely on behalf of Plaintiff in his individual capacity." (Doc. 15 at 2, n.1 (emphasis added)).

Court to determine that Plaintiff's proposed class is "simply unworkable" and to dismiss Plaintiff's class claims. (*Id.*). Defendant explains that Plaintiff's §§ 1681e(b) and 1681k(a) claims require individualized inquiries with respect to *each* putative class member, and that such individualized considerations predominate over any common issues of fact and law and thereby make Plaintiff's claims inappropriate for class treatment.[5] (*Id.* at 6–11). Plaintiff characterizes Defendant's Motion as an attempt to prematurely litigate class certification and argues that the viability of Plaintiff's proposed class should be decided at the class certification stage. (Doc. 22 at 15). Plaintiff explains that there is "simply no basis to conclude certification would be impossible" and that he should at least be permitted discovery so that the Court may decide the certification issue based on a complete record. (*Id.* at 11). Plaintiff contests Defendant's argument that the class claims would necessitate overly individualized inquiries and contends that common issues of fact and law predominate, making Plaintiff's claims capable of class-wide resolution. (*Id.* at 9–15).

"Motions to strike class allegations are particularly disfavored because it is rarely easy to determine before discovery whether the allegations are meritorious." *Cheatham*, 161 F. Supp. 3d at 834 (citations omitted). Generally, the plaintiff's motion for class certification "is a more appropriate vehicle" for determining whether class allegations should be dismissed. *Baughman v. Roadrunner Commc'ns*, No. CV-12-565-PHX-SMM, 2013 WL 4230819, at *2 (D. Ariz. Aug. 13, 2013) (citation omitted). "Nonetheless, class allegations may be stricken when it is clear from the face of the complaint that no class can

---

[5] Rule 23 outlines the requirements for a class to be certified. Rule 23(a) requires the plaintiff to establish the following four prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Rule 23(b) provides the predominance requirement that is at issue on this Motion: "A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

be certified." *Cheatham*, 161 F. Supp. 3d at 834 (citations omitted); *see also Baughman*, 2013 WL 4230819, at *2 (quoting *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010)) ("[P]ursuant to [Rule] 23(c)(1)(A), 23(d)(1)(D), and 12(f), this Court may 'strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.'"); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009) ("A defendant may move to deny class certification before a plaintiff files a motion to certify a class."). Although the plaintiff bears the burden of establishing class certifiability in the context of a motion to certify a class, "in the context of a motion to strike class allegations, in particular where such a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is not certifiable." *Naiman v. Alle Processing Corp.*, No. CV20-0963-PHX-DGC, 2020 WL 6869412, at *6 (D. Ariz. Nov. 23, 2020) (quotations and citation omitted).

Defendant argues that "this case presents one of those instances where the viability of the proposed class is discernable from the face of the [Amended Complaint]." (Doc. 15 at 5). As to Plaintiff's § 1681e(b) claim, Defendant contends that—if the claim proceeds as a class claim—highly individualized inquiries will be necessary to assess at least *three* of the claim's necessary elements: (i) existence of inaccuracies; (ii) causation; and (iii) failure to follow reasonable procedures. (*Id.* at 6–8). As to the § 1681k(a) claim, Defendant contends that—if the claim proceeds as a class claim—highly individualized inquiries will be necessary to assess whether First Advantage maintained strict procedures in preparing each report, including inquiries into "where [each member's] records came from, what searches and quality review processes were used for their background report, and whether their information was complete and up to date." (*Id.* at 8–9).

The Court agrees with Plaintiff that proving the "existence of inaccuracies" in each class member's report will not *necessarily* require an individualized assessment. The alleged inaccuracies will not vary from class member to class member. Rather, the class members allegedly experienced a *common*, *consistent* inaccuracy in First Advantage's background reports: the notation of a criminal disposition of "guilty" despite the fact that

7

the underlying conviction had been set aside pursuant to A.R.S. § 13-905. That said, the Court recognizes that compiling a list of individuals who had a report containing such an inaccuracy could prove to be difficult. As Defendant points out, Plaintiff must identify all individuals "who (i) had a court record of an Arizona conviction reported by First Advantage, where (ii) the relevant court files also contained a record that the conviction had been set aside under A.R.S. § [13-905]." (Doc. 25 at 4). Discovery related to the first prong should not be terribly difficult; indeed, Defendant itself admits that a list could likely be compiled from data within First Advantage's own records. (*Id.* at 4–5). Discovery related to the second prong, however, will likely be more difficult because Defendant does not possess records of convictions that were set aside; indeed, the very "gravamen of Plaintiff's entire lawsuit" is that First Advantage failed to identify convictions that were set aside when compiling the reports. (*See id.* at 5).

Plaintiff refers to A.R.S. § 41-1750, which "requires all criminal history to be housed in on 'central state repository,'" and contends that set-aside records "should be susceptible to a systematic search." (Doc. 22 at 10). Defendant responds that such set-aside records "reside[] with the various courts in which each putative class member was convicted"—that is, *not* in a central state repository—and contends that individualized research regarding each putative class member would have to be conducted. (Doc. 25 at 5). Defendant, however, offers no support for its assertion that the statutorily required central state repository lacks information on set-aside records or that such records are indeed housed solely at the specific courthouses across the state. In the end, Defendant may very well be correct that identifying the class members could prove to be an "incredibly individualized" and "herculean" undertaking. (*Id.*). Indeed, Plaintiff expressly acknowledges this possibility in his Response:

> For certification, Plaintiff will need to show that a list may be compiled of reports that included a "guilty" disposition after the convictions had been set aside under Arizona law. Discovery will likely reveal whether and to what extent compiling such reports is possible—at the pleadings stage, it would be improper to conclude as a matter of law that certification would be impossible.

8

(Doc. 22 at 10). Regardless, Defendant has failed to demonstrate that identification of class members will undoubtedly be an individualized inquiry. It is not clear from the parties' briefing whether the set-aside records are stored in a central state repository, pursuant to § 41-1750, or if Defendant is correct that such records may only be found at the specific courthouses across the state. Plaintiff should at least be allowed the opportunity to conduct discovery and determine whether the set-aside records can be obtained in a manner that does not require extensively individualized inquiries.

Likewise, the Court is unpersuaded that assessment of the causation issue will necessarily require individualized inquiries. Defendant's argument implies that Plaintiff would need to prove for each and every class member that it was First Advantage's inaccurate notation of their set-aside conviction on their respective reports that caused their prospective employer to deny them the job or that otherwise harmed them in their search for employment. As Plaintiff points out, however, each member need only demonstrate that First Advantage furnished the report containing an inaccuracy to a third-party in order to sufficiently demonstrate injury. (Doc. 22 at 12 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208–09 (2021) (finding that class members need only show that reports were disseminated to third parties to demonstrate a concrete injury under § 1681e(b)))). Such a showing is not particularly individualized, as Plaintiff need not demonstrate that each class member was denied employment—or that the various employers denied employment *because of* the conviction being included in the report, as opposed to some other reason— so long as Plaintiff can show that the report was disseminated to the employer or some other third-party. The parties do not indicate any concerns as to First Advantage's ability to identify—from its available data—which reports were actually furnished to a third-party.

Finally, the Court is unpersuaded by Defendant's argument that the question of whether First Advantage "followed reasonable procedures" (for the § 1681e(b) claim) or "maintained strict procedures" (for the § 1681k(a) claim) will necessarily require individualized inquiries. In the Reply, Defendant argues that:

> Plaintiff suggests, incorrectly, that a standard set of procedures

> applies in all cases such that the determination of which procedures were used and whether they were "reasonable" or "strict" can be done in broad brushstroke.
>
> What Plaintiff fails to appreciate (and what logic dictates) is that no "one-size-fits-all" approach can be adopted in the preparation of a background report. Indeed, the various courthouses across Arizona employ different methods of filing, storing, and denoting criminal records. Accordingly, a procedure that is "reasonable" and "strict" in one county may not be in another county. The import of these differences is that individualized inquiries will be necessary for each putative class member to determine whether First Advantage employed "reasonable" or "strict" procedures given the circumstances unique to that individuals' records and the court repository in which they are housed.

(Doc. 25 at 6–7 (internal citation omitted)). The Court rejects Defendant's argument because it implies that First Advantage uses no consistent procedures at all in preparing background reports. As noted above, the FCRA *obligates* CRAs like First Advantage to have in place certain reasonable and strict procedures. Defendant cannot shrug this obligation by merely arguing that "every report is unique and different." Moreover, and as discussed above, a factual dispute exists as to whether the set-aside records can be found in a central state repository or only in the records of the specific courts across the state. If the records are found in a central state repository—or in any other easily accessible, central location—it would stand to reason that First Advantage *could* have a "reasonable" or "strict" procedure in place that would ensure that the set-aside records were checked during the preparation of any background report. These factual uncertainties can be resolved through discovery, and the Court will then be in better position to determine whether assessing First Advantage's procedures involves individualized issues that predominate over common issues of law and fact.

**IV.   CONCLUSION**

In sum, the Court finds that the parties' disputes with respect to the necessity and extent of individualized inquiries regarding each class member—and as to whether such inquiries would predominate over common questions of law and fact—cannot be resolved by a simple review of Plaintiff's Amended Complaint. Rather, the Court finds that Plaintiff

should be granted at least some opportunity to conduct limited discovery relevant to the class certification issue. *See Hawkins v. S2Verify*, No. C 15-03502 WHA, 2015 WL 5748077, at *2 (N.D. Cal. Oct. 1, 2015) (internal citations omitted) ("Our court of appeals has ruled that 'often the pleadings will not resolve the question of class certification and that some discovery will be warranted.' In determining whether an action shall remain a class action, a court must consider 'the probability of discovery resolving any factual issue necessary.' In such a case, to deny discovery would be an abuse of discretion."). Such discovery will allow Plaintiff to develop a complete record and make an informed decision as to whether he wishes to continue pursuing class certification. If Plaintiff opts to file a motion for class certification, the parties will have a full opportunity to make their respective arguments for and against such certification at that time. At that point, the Court will be able to decide class certification based on a complete record and on the parties' fully briefed arguments.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss/Strike Plaintiff's Class Claims (Doc. 15) is **denied**.

Dated this 8th day of June, 2023.

Honorable Steven P. Logan
United States District Judge